The Honorable Marc L. Barreca
Chapter 11
Hearing Location: TELEPHONIC
Hearing Date/Time: October 22, 2020 at 9:30 AM
Response Due: October 15, 2020

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

In re:

TIMOTHY DONALD EYMAN,

    Debtor.

NO. 18-14536-MLB

STATE OF WASHINGTON'S RESPONSE TO MOTION TO SELL DEBTOR'S INTEREST IN MARITAL HOME

Debtor Timothy Eyman is moving to sell his interest in his Mukilteo residence to his wife, Karen Eyman. The Court should deny this motion for a number of reasons. The home value of $875,000 is unsupported by the evidence and the proposed sale price to Mrs. Eyman of $372,500 is grossly insufficient. Debtor Eyman's proposal is attempting to put the Mukilteo home out of the reach of his creditors by offering this *de minimis* payment from Mrs. Eyman.

The motion actually requests that Mrs. Eyman buy the entire community interest in the home for $372,500, not just the interest of Debtor Eyman. To obtain ownership of the community interest in the home, Mrs. Eyman must purchase the entire community interest in the home with her separate property or the home remains a community asset. Since Debtor Eyman did not disclose the funds to be used for this proposed purchase in the bankruptcy, the State requests clarification concerning the source of these funds. Additionally, should the Court consider allowing the sale to go forward, the sale price should be adjusted to an optimal value and Debtor Eyman must be required to deposit in the Claims Reserve Account all of the remaining sale proceeds after payment of the administrative claims.


STATE OF WASHINGTON'S RESPONSE TO MOTION TO SELL DEBTOR'S INTEREST IN MARITAL HOME

1

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 304    Filed 10/15/20    Ent. 10/15/20 16:25:33    Pg. 1 of 10

**I.      The Statute of Frauds required a *written* agreement to convert the status of the Seattle home from jointly held to separate property. Debtor has not provided any evidence of a written agreement.**

"[U]nder the laws of this state, the status of real property as distinguished from personal property; e.g., earnings, cannot be changed by mere oral agreement of the spouses. The necessity for a writing changing the separate status of real property has been said to arise because of the statute requiring all conveyances of real estate or an interest therein and all contracts creating or evidencing any encumbrance upon real estate to be by deed or written contract." *In re Verbeek's Estate*, 2 Wn. App. 144, 156, 467 P.2d 178, 186 (1970).

Debtor Eyman states in his motion that he and Karen Eyman were married in 1993, and in 1996, Mrs. Eyman and her parents quit claimed a Seattle home to "Karen Joan Eyman and Timothy Donald Eyman". Debtor Eyman claims that the transfer was only to "clear title" but that the "Seattle home was construed to be the separate property of Mrs. Eyman even after the filing of the Quit Claim Deed." However, the motion does not indicate that there was ever a written agreement that changed the status of the Seattle home from jointly held by Debtor and his wife to the separate property of Mrs. Eyman. Because there was no written agreement to treat the Seattle home as separate, any sale proceeds from the Seattle home applied to the down payment of the Mukilteo home must be treated as community property.

**II.     Even if the Seattle home was Mrs. Eyman's separate property, the down payment for the Mukilteo home was $96,690.14, not the $290,000.00 claimed in the Debtor's motion.**

On August 19, 1998, the Eymans purchased the Mukilteo home for $433,000.00, which is reflected in the Details of Transaction submitted with Debtor's motion. *Debtor's Motion to Sell*, Docket # 302, pg. 20, Details of Transaction. The August 20, 1998 Deed of Trust on the Mukilteo home establishes that the Eymans took out a mortgage of $346,400.00 to finance the Mukilteo home. Edison Declaration, Ex. 1, August 20, 1998 Mukilteo Deed of Trust. Based upon

STATE OF WASHINGTON'S RESPONSE TO
MOTION TO SELL DEBTOR'S INTEREST IN
MARITAL HOME

2

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 304    Filed 10/15/20    Ent. 10/15/20 16:25:33    Pg. 2 of 10

these documents, the down payment on the Mukilteo home was $86,600.00, not $290,000.00. Adding from the Details of Transaction, the prepaid items, closing costs and discount points of $10,090.14, there was a total of $96,690.14 contributed by the Eymans to the purchase of the Mukilteo home[1]. Setting aside the lack of a written agreement establishing the Seattle home as the separate property of Mrs. Eyman, the most she could have paid in separate property toward the purchase of the Mukilteo home is $96,690.14 and not $290,000 as claimed by the Debtor.

### III. The Debtor does not use the appropriate value for the Mukilteo home.

Additionally, Debtor Eyman claims the Mukilteo home should be valued at $875,000 without any basis for this price except Mrs. Eyman's personal belief that this price is appropriate. This price conflicts with the July 2020 appraisal by the Eymans' own real estate agent, Windermere Realty Company, which valued the home between $975,000 and $1,025,000. *Debtor's Motion to Sell*, Docket # 302, pgs. 20-39. The Mukilteo home's current estimated value on Redfin.com is $1,000,299, and on Zillow.com, it is $1,035,204. Edison Declaration, para. 2 and 3.

### IV. The Eymans are not divorced or in the process of seeking dissolution.

The alleged reason for this motion is that the Eymans are seeking a dissolution of their marriage and the buyout of the Mukilteo home is necessary to conclude this process. There is no

---

[1] The closing statement provides that $289,666.14 was the cash from the borrower. However, $192,976.00 represents the payoff of the mortgage of the Seattle home. Thus, only $96,690.14 contributed to the purchase of the Mukilteo home.

| Description | Amount |
|---|---|
| Mukilteo Purchase Price | $ 433,000.00 |
| Estimated Prepaid Items | $ 4,380.67 |
| Estimated Closing Costs | $ 5,449.67 |
| Discount points | $ 259.80 |
| Mukilteo Mortgage Amount | $(346,400.00) |
| Contribution to purchase of Mukilteo home | $ 96,690.14 |

STATE OF WASHINGTON'S RESPONSE TO MOTION TO SELL DEBTOR'S INTEREST IN MARITAL HOME

3

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 304    Filed 10/15/20    Ent. 10/15/20 16:25:33    Pg. 3 of 10

pending dissolution action. After Debtor Eyman filed a dissolution petition on May 17, 2019, no activity occurred in the case. The Snohomish County Superior Court dismissed the dissolution action in February 2020 due to the Eymans' failure to appear at the ADR/Mediation Compliance Hearing. Edison Declaration, Ex. 2, Dissolution Action Court Docket, and Ex. 3, February 14, 2020 Findings and Order on ADR/Mediation Compliance Hearing. The State has searched both Snohomish and King County case filings and has not found any current dissolution action.[2] Therefore, the entire premise of this motion is questionable. Debtor Eyman is again trying to transfer the Mukilteo home out of the reach of the bankruptcy by offering a *de minimis* payment by Mrs. Eyman for a community asset.

**V.  The Court should deny the motion because the Eymans' home and debts are community property and Debtor did not disclose the purchase funds in the bankruptcy**.

Washington law establishes that the Mukilteo home is community property. Under RCW 26.16.030, Washington is a community property state meaning "all property and income generated by both spouses during a marriage is community property." *Brubaker v. Hovde*, 45 Wn. App. 44, 723 P.2d 1193 (1986). According to the motion, Mrs. Eyman apparently now has available funds of $372,500.00 to purchase the home. Debtor Eyman did not disclose these funds during the bankruptcy and was required to do so. Since all property and income generated during marriage are considered community assets, the court should require the Eymans disclose the source of these funds. Additionally, Mrs. Eyman must establish that she is purchasing the community interest in the home with her separate funds. Otherwise, Mrs. Eyman is purchasing the Mukilteo home, which is a community asset, with community funds in an attempt to turn the home into separate property, thus making it unavailable to pay community debts.

---

[2] Since there is no decree of dissolution or legal separation, any purchase by Mrs. Eyman would not qualify for a REET exemption so if this sale is allowed to occur, it will be subject to tax. RCW 82.45.010(3)(f) and WAC 458-61A-203.

STATE OF WASHINGTON'S RESPONSE TO
MOTION TO SELL DEBTOR'S INTEREST IN
MARITAL HOME

4

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 304    Filed 10/15/20    Ent. 10/15/20 16:25:33    Pg. 4 of 10

Debtor Eyman's debts are community debts. When a spouse files a bankruptcy petition, the bankruptcy estate encompasses the community property. *In re Homan*, 112 B.R. 356, 359 (9th Cir. BAP 1989). Any debts incurred by either spouse after marriage are community debts. *In re Dickerson,* 597 B.R. 101, 108 (Bankr. W.D. Wash. 2019) citing *Oil Heat Co. of Port Angeles Inc. v. Sweeney*, 26 Wn. App. 351, 353, 613 P.2d 169 (1980).[3] Further, a judgment entered solely against one spouse is presumed to be a community obligation, even if the judgment names only one spouse and only that spouse is served with process. *Whitehead v. Satran*, 37 Wn.2d 724, 725, 225 P.2d 888 (1950) and *Oil Heat Company of Port Angeles v. Sweeney*, 26 Wn. App. 351, 353, 613 P.2d 169, 171 (1980).[4] "If the obligation is incurred by the community, then community property, including the earnings of both spouses, is liable for the debt." *Pacific Gamble Robinson Co. v.* LAPP, 95 Wn.2d 341, 344, 622 P.2d 850 (1980). *See also Seattle First National Bank v. Marusic*, 139 B.R. 727, 731 (Bankr. W.D. Wash. 1992) ("Wages and other earnings during marriage are "onerously" and not "lucratively" acquired, and are community property."). Therefore, all judgments and orders entered against Debtor Eyman in the underlying state court actions are also judgments against Mrs. Eyman. This is true for any judgment entered in *State v. Eyman,* 17-2-01546-34, currently set for trial on November 16, 2020 in Thurston County, because the events at issue in this case occurred during the Eymans' marriage.

**VI. Purchase and Sale Agreement should be declared null and void.**

Based upon the above arguments, the Court should declare the Purchase and Sale Agreement null and void and the Restriction on Transfer recorded in Snohomish County under

---

[3] This presumption can only be overcome by clear and convincing evidence. *Oil Heat Company of Port Angeles v. Sweeney,* 26 Wn. App. 351, 353, 613 P.2d 169, 171 (1980). "The burden of proving that a debt is not a community obligation rests on the community." *Pacific Gamble Robinson Co. v. Lapp,* 95 Wn.2d 341, 344, 622 P.2d 850 (1980).

[4] To overcome this presumption, either spouse must show that it was a separate obligation. *Whitehead v. Satran,* 37 Wn.2d 724, 725, 225 P.2d 888 (1950).

STATE OF WASHINGTON'S RESPONSE TO MOTION TO SELL DEBTOR'S INTEREST IN MARITAL HOME

5

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 304    Filed 10/15/20    Ent. 10/15/20 16:25:33    Pg. 5 of 10

Document #202004090645 should remain in place. Additionally, in provision 5.3 of the Agreement, the sale is contingent on the State of Washington releasing any and all claims against the purchaser in relationship to *State v. Eyman,* 17-2-01546-34, and *State v. Tougher to Raise Taxes,* 16-2-03891-4, both filed in Thurston County. The State will not agree to this release because these claims are community debts, so the Agreement is null and void on this basis as well.

**VII. The Bankruptcy Code requires an optimal price for the Eymans' home.**

Should the Court be inclined to authorize the sale, the Court should require an optimal price for the home. Debtor Eyman claims that this proposed sale represents a fair value for the community interest in the Mukilteo home pursuant to the requirements of 11 USC § 363(b), which governs the sale of property. While section 363 may authorize a trustee, or in this case the debtor in possession, Debtor Eyman, to sell property of the estate, the bankruptcy court must ensure said property is sold at an optimal value. *Simantob v. Claims Prosecutor, LLE (In re Lahijani),* 325 B.R. 282, 288 (9th Cir. BAP 2005). Additionally, a debtor must sell property to a good faith purchaser. An "[a]bsence of good faith" is established by showing fraud or collusion. *Adeli v. Barclay (In re Berkeley Del. Court, LLC)*, 834 F.3d 1036, 1041 (9th Cir. 2016) (quoting *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 577 (9th Cir. 1998)).

Mrs. Eyman is not a good faith purchaser. She has not offered an optimal value for the Eyman home and the low price appears to be the result of collusion to ensure Mrs. Eyman receives the community home at a reduced price. This collusion violates Debtor Eyman's fiduciary duty as debtor in possession to protect and preserve the assets of the estate and act in the best interests of the creditors. 11 U.S.C. § 1007; *CFTC v. Wientraub*, 471 U.S. 343, 355, 105 S. Ct. 1985, 85 L.Ed.2d 372 (1985): *In re Brook Valley VIII,* 496 F.3d 892, 900 (8th Cir. 2007) and *In re Frankel,* 77 B.R. 401, 404 (Bankr. W.D. N.Y. 1987).

STATE OF WASHINGTON'S RESPONSE TO
MOTION TO SELL DEBTOR'S INTEREST IN
MARITAL HOME

6

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 304    Filed 10/15/20    Ent. 10/15/20 16:25:33    Pg. 6 of 10

Debtor Eyman also proposes questionable deductions from the sale price for Chapter 7 trustee fees, homestead allocation, sale costs, and $290,000 for Mrs. Eyman's separate property. Debtor Eyman claims these deductions makes the net community value or interest in the home $345,307.00. Mrs. Eyman has offered to buy this community value for $372,500. Since there is no trustee, the sale should not include these fees. Mrs. Eyman is not entitled to any reduction for separate property contributions because the Seattle home was not separate property. If the Court finds that the Seattle home contained separate property, only the $96,690.14 contributed to the purchase of the Mukilteo home, at most, is possible separate property. The following chart shows the community value and the amount of funds available to creditors if Debtor Eyman sells the Mukilteo home after deducting only the costs of sale, homestead allocation and the alleged $96,690.14 contributed by Mrs. Eyman. The chart demonstrates that an optimal purchase price and limited deductions raises the community value and leaves more funds to pay to creditors.

|  | Mrs Eyman | Windermere Low | Windermere High | Redfin | Zillow |
|---|---|---|---|---|---|
|  | $875,000.00 | $975,000.00 | $1,025,000.00 | $1,000,299.00 | $1,035,204.00 |
| Homestead | $(125,000.00) | $(125,000.00) | $(125,000.00) | $(125,000.00) | $(125,000.00) |
| Cost of sale 8% | $(70,000.00) | $(78,000.00) | $(82,00.00) | $(80,023.92) | $(82,816.32) |
| **Community value available to Creditors** | **$680,000.00** | **$772,000.00** | **$818,000.00** | **$795,275.08** | **$827,387.68** |
| Community value available to creditors with deduction for $96,690.14 separate property | $583,309.86 | $675,309.86 | $721,309.86 | $698,584.94 | $730,697.54 |

STATE OF WASHINGTON'S RESPONSE TO MOTION TO SELL DEBTOR'S INTEREST IN MARITAL HOME

7

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 304    Filed 10/15/20    Ent. 10/15/20 16:25:33    Pg. 7 of 10

Even at the suggested price of $875,000 with the appropriate deductions, there would be $680,000.00 in net proceeds available to creditors. Allowing Mrs. Eyman to pay $372,500 at this low price would result in a windfall to her of $307,500.00. This would also be a windfall to the Eymans' marital community since there would no longer be any restriction on their home and they would be able to retain the funds used by Mrs. Eyman to purchase the community value of the home.

Additionally, the Mukilteo home price used by the Eymans is too low and does not satisfy the requirement that the home be sold at an optimal value. A more appropriate value is the high end of the Eymans' Windermere appraisal, which is $1,025,000.00 and is similar to the current Redfin and Zillow values. In this scenario, the community value of the home is $818,000.00, which if paid by Mrs. Eyman would leave this amount for disbursement to creditors. As stated previously, Mrs. Eyman must also establish that she is purchasing the home with her separate funds. Otherwise, the purchase is just a shifting of community funds to benefit Debtor Eyman and to release the restriction on any transfer of the home.

**VIII.     If the sale occurs, proceeds should be deposited in the Claims Reserve Account**

The sale of the Eyman home is contingent on Court approval. This provision was included in the bankruptcy plan to avoid the situation presented in this motion that Debtor Eyman would attempt to sell the community home at an artificially low price and keep the proceeds. At this time, the case of *State v. Eyman,* 17-2-01546-34, is pending against Debtor Eyman and set for trial on November 16, 2020. Any judgment in this case is nondischargeable and will likely be several million dollars. Should the Court allow the sale of the home at an optimal value, the State requests that Debtor Eyman be required to deposit into the Claims Reserve Account all of the funds remaining after the payment of the outstanding administrative claims, which is approximately $56,000. Once there is a final verdict in the state court action, the funds from the home sale should be paid as a lump sum to the State or should be applied to the State's claim by

STATE OF WASHINGTON'S RESPONSE TO MOTION TO SELL DEBTOR'S INTEREST IN MARITAL HOME

8

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 304    Filed 10/15/20    Ent. 10/15/20 16:25:33    Pg. 8 of 10

increasing the monthly payments. Debtor Eyman should be required to pay this lump sum amount in addition to the monthly payments that are currently required under the plan. The State also requests that the court require Debtor Eyman to provide during the course of this bankruptcy monthly bank statements from the Claims Reserve Account to confirm all these deposits.

This modification would be appropriate under 11 U.S.C. § 1127(e)(1), which enables an unsecured creditor to request a change in plan payments in Chapter 11 cases involving individual debtors. Section 1127(e)(1) allows a plan to be modified to require a debtor to pay more toward the satisfaction of creditors' claims than initially required by a debtor's confirmed plan or to reduce the time within which plan payments must be made. Since this sale would be a windfall to Debtor Eyman, he should be required to increase payments on the State's claim. In the Ninth Circuit, modification of the plan under § 1127(e)(1) is within the Court's discretion. *In re Sanford,* 498 B.R. 307, 310 (Bankr. D. N. M. 2013) and *In re Mattson,* 468 B.R. 361, 367 (9th Cir. BAP 2012) (Discussing 11 USC § 1329 (a), a similar provision for Chapter 13 plans). In *Sanford,* the court did not grant modification because it would have affected a settlement the debtor reached with other creditors, the secured lenders. Here, there is no such concern. An increase in payments to the State, the primary creditor in this case, would not alter the terms of the plan as to the other unsecured creditor.

In addressing 11 U.S.C. § 1329(a), the post-modification provision for Chapter 13 plans similar to § 1127(e)(1), Courts have required chapter 13 debtors to amend their plans for increased payments when there is an improvement in the debtor's financial condition. *In re Arnold*, 869 F. 2d 240, 242 (4th Cir. 1989). Clearly, if the sale occurs, Debtor Eyman will receive an influx of funds from Mrs. Eyman improving his financial condition and requiring modification. Courts have found since "creditors are forced to bear the risks of any deterioration in a debtor's financial standing… they should also have the opportunity to share any benefits which might flow from an improvement in that position during this same period of time." *In re Lybrook,* 107 B.R. 611, 615 (Bankr. N.D. Ind. 1989), *aff'd sub nom, Lybrook v. Robb,* 135 B.R.

STATE OF WASHINGTON'S RESPONSE TO
MOTION TO SELL DEBTOR'S INTEREST IN
MARITAL HOME

9

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 304    Filed 10/15/20    Ent. 10/15/20 16:25:33    Pg. 9 of 10

321 (N.D. Ind. 1990), *aff'd sub nom. Matter of Lybrook,* 951 F.2d 136 (7th Cir. 1991). See also *In re* Guillen 927 F.3d 1221, 1227 (11th Cir. 2020).

Therefore, if Debtor Eyman receives proceeds from the sale, the bankruptcy plan should be modified to address this increase in funds. If the Court allows the sale, the State requests pursuant to 11 USC § 1127(f)(2), which states the plan will be modified as "the court may direct," that the Court allow modification of the plan as requested in this response or give the State time to request modification of the plan to encompass Mrs. Eyman's purchase of the home.

### IX. Conclusion

The State requests that the Court deny this motion and find the Purchase and Sale Agreement null and void. The State requests that the Eymans disclose the source of the proposed purchase funds. If the sale is allowed, the State requests that the Mukilteo home be sold for an optimal price, the sale proceeds be placed in the Claims Reserve Account for payment to the State upon a verdict in *State v. Eyman,* 17-2-01546-34, and Debtor Eyman provide monthly bank statements from the Claims Reserve Account. The bankruptcy plan should be modified, so the sale proceeds are paid to the State in addition to the monthly payments that are currently required under the plan.

DATED this 15th day of October, 2020.

ROBERT W. FERGUSON
Attorney General

/s/ Susan Edison

SUSAN EDISON, WSBA No. 18293
  *Assistant Attorney General*
DINA YUNKER FRANK, WSBA No. 16889
  *Assistant Attorney General*
ERIC S. NEWMAN, WSBA No. 31521
  *Chief Litigation Counsel, Antitrust Division*
Attorneys for the State of Washington

STATE OF WASHINGTON'S RESPONSE TO MOTION TO SELL DEBTOR'S INTEREST IN MARITAL HOME

10

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 304    Filed 10/15/20    Ent. 10/15/20 16:25:33    Pg. 10 of 10