The Honorable Marc L. Barreca
Chapter 11
Hearing: November 18, 2021 at 9:30
Reply: November 11, 2021

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re<br><br>TIMOTHY DONALD EYMAN,<br><br>Debtor. | NO. 18-14536-MLB<br><br>DEBTOR'S RESPONSE TO STATE OF WASHINGTON'S MOTION FOR APPOINTMENT OF A TRUSTEE and DECLARATION |

COMES NOW the Debtor, Timothy D. Eyman, by and through his attorney, Larry B Feinstein of Vortman & Feinstein, and responds to the State of Washington's Motion to Enforce Default Provisions and Appoint a Chapter 11 Trustee, as follows:

The Debtor, Mr. Timothy Eyman, confirmed a Chapter 11 Plan of Reorganization on April 8, 2020 (ECF #274). The Plan contained the following provision regarding Default under the Plan:

"Section 9.01 Default. In the event of default by the Debtor of any provisions of the Plan, the creditor affected by the default (the "Affected Creditor") may serve a written notice of the default and opportunity to cure (the "Default Notice") on the Debtor according to Section 10.06, and Debtor's counsel as set forth in Section 10.06. If the Debtor fails to cure the default within thirty (30) days of service of the Default Notice, the claim of the Affected Creditor becomes immediately due and payable. The Affected Creditor may proceed against the Debtor and/or the assets of the Debtor and/or of the Estate using any state or federal remedies without need for resort to this Court for relief from the automatic stay and without being deemed to have violated the terms of this Plan, the confirmed order or the Code. Service of the Default Notice is effective upon mailing and giving the Debtor and Debtor's counsel notice electronically by email as set forth in Section 10.06. The Affected Creditor may enforce its rights in state court or in bankruptcy court. Additionally, if the Debtor fails to cure

Debtor's Response to Motion for Trustee     1     Vortman & Feinstein
2033 6th Ave, Suite 251
Seattle, WA 98121
206-223-9595

default, by motion of any interested party, an order appointing a Chapter 11 Trustee may be entered, who shall have the rights, powers and duties specified in 11 U.S.C. §§1104, 1106 and 704 (as made applicable by §1106) to make distributions under the terms of the confirmed plan and administer Estate assets, including, but not limited to, liquidating [the house] and distributing Debtor's interest therein to unpaid Class 1 claims.

However, starting in 2022, when the Plan payment increases to $13,500 per month on the claims of the State, the default provisions of the Plan above are modified such that the State cannot declare a default under the Plan if the total of all payments made on a quarterly basis averages $13,500 per month for any quarter in which a monthly delinquency occurred. For illustrative purposes: if the Debtor pays only $7,500 in any particular month because of a decrease in income during that period, but makes up the difference the following month, so that on a quarterly accounting basis, the Debtor's payments average $13,500 per month for that quarter, then no default under this Plan may be declared. This quarterly accounting does not apply for the $10,000 per month payments for 2020 and 2021 required in this Plan, and the above default provisions control.

If the Debtor is found to be in default by failing to make payments on the State's claim including the administrative claim and/or by failing to make regular payments to the Claims Reserve, starting on the date of the default, and said default is not cured as provided in this Section above, interest at the state rate of 12% per annum pursuant to RCW 4.56.110 shall be applied to any present or future amount owed on the State's claims. This rate shall remain in effect until the Debtor obtains a ruling by the Bankruptcy Court that the default has been cured, and then interest accruing thereafter shall be the non-default interest rate provided in this plan.

The Debtor does not dispute he has been unable to make the current payment called for under the Plan. He has "plum run out of money." He used the last of his financial resources to pay the Plan payment(s) and towards allowed administrative claims incurred in these proceedings, including the allowed fees of Richard Sanders' firm to handle the appeal in the *State v. Eyman* state court matter. [Plan payments are currently $11,400.00 per month, but go up to *$14,900.00 per month* in January 2022.] See *Declaration of Timothy Eyman* filed concurrently herewith. The Debtor has been reviewing various Options to seek modification of the Plan, but, at this time,

Debtor's Response to Motion for Trustee

2

Vortman & Feinstein
2033 6th Ave, Suite 251
Seattle, WA 98121
206-223-9595

due to the trial court's restrictions on his political activities, including his fundraising activities, he cannot represent to the Court that he has any income in an amount(s) to make a modified Plan feasible. Thus, the State created the default situation by obtaining a state court order restricting his fundraising activities, but then turns around and demands he continue to make $11,400/month plan payments [going up to $14,900/month in January].

The Debtor agrees that the above default provisions contain mostly boilerplate default provisions, such as granting a creditor whose plan payment is in default to exercise their state court or bankruptcy court remedies for collection. However, the Debtor disagrees that any terms in this Plan regarding a default contradict the Bankruptcy Code, including Sections 704, 1104, and 1106, that contain specific language as to their applicability pre- and post-confirmation.

In the instant matter, Section §1104 is not applicable, as said section deals with the case "at any time after the commencement of the case *but before confirmation of a plan*...." Since the Plan was confirmed, Section §1104 is no longer applicable. Post-confirmation, this section of the Code provides no basis for appointment of a trustee. By its express language, it is inapplicable. It is only applicable <u>before</u> the Plan was confirmed. As the Court may recall, the State was unsuccessful in appointing a Chapter 11 Trustee pre-confirmation. ECF ## 160 (Motion), 178 (Audio of 11/22/19 hearing), 192 & 193 (Audio of 12/19/19 hearing), 209 (Audio of 2/6/20 hearing), and 266 (Audio of 4/2/20 hearing). So now it must find another statutory basis for appointing a Chapter 11 Trustee if one exists, as none is cited.

The State does at least attempt to find authority in the case law, but is unsuccessful. They cite *In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 168 (Bankr. SDNY 1990), for authority to appoint a Trustee, but that case has the wrong procedural posture to be relevant here, as it involved the administration of the Chapter 11 *prior to the filing of a Plan.* Similar is the State's citation to *In re Oklahoma Refining Co.,* 838 F.2d 1133, 1136 (10th Cir. 1988), again a pre-confirmation Chapter 11 debtor. The State cites no authority in case law for appointment post-confirmation of a trustee under Section §1104: it has failed to pinpoint even one authority that would allow for the appointment of a Chapter 11 trustee after the Plan has been confirmed.

Going back to the default provision in the Plan, the Plan also references 11 U.S.C. §704, which states if the case was converted to a Chapter 7 proceedings, the Plan preserved the rights of the estate and a trustee appointed under §704, which is also not applicable in this proceedings. Conversion to Chapter 7 is not before this Court.

Assuming the Court interprets the default provision in the confirmed Plan to authorize appointment of a Chapter 11 trustee independently of any other statutory or case law authorities, the State clearly wants this Trustee to have all of the powers and duties listed in §1106. That Section provides as follows:

(a) A trustee shall—

    (1) perform the duties of the trustee, as specified in paragraphs (2), (5), (7), (8) (9), (10), (11), and (12) of section 704(a);

    (2) if the debtor has not done so, file the list, schedule, and statement required under section 521(a)(1) of this title;

Debtor's Response to Motion for Trustee      4      Vortman & Feinstein
2033 6th Ave, Suite 251
Seattle, WA 98121
206-223-9595

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates;

(5) as soon as practicable, file a plan under section 1121 of this title, file a report of why the trustee will not file a plan, or recommend conversion of the case to a case under chapter 7, 12, or 13 of this title or dismissal of the case;

(6) for any year for which the debtor has not filed a tax return required by law, furnish, without personal liability, such information as may be required by the governmental unit with which such tax return was to be filed, in light of the condition of the debtor's books and records and the availability of such information;

**(7) after confirmation of a plan, file such reports as are necessary or as the court orders;** and

(8) if with respect to the debtor there is a claim for a domestic support obligation, provide the applicable notice specified in subsection (c).

The *only* provision of Section §1106 that applies to a post-confirmation debtor is subsection (7), which provides for the Trustee to "file such reports as are necessary or as the court orders." Essentially that would be the quarterly UST post-confirmation reports. The Debtor has been consistently filing post-confirmation reports since

Debtor's Response to Motion for Trustee — 5 — Vortman & Feinstein, 2033 6th Ave, Suite 251, Seattle, WA 98121, 206-223-9595

Case 18-14536-MLB    Doc 382    Filed 11/10/21    Ent. 11/10/21 10:44:11    Pg. 5 of 10

confirmation excluding the quarterly report filed through the second quarter of 2021. (ECF #348). The third quarter report was just due at the end of October 2021.

There is simply no justification for the time, effort, and expense of a post-confirmation Chapter 11 trustee, which would include the added administrative costs of that trustee, an attorney for trustee, and an accountant for the trustee. ***Who is going to pay for this?*** There are no funds in the estate, and all assets of the estate have revested back to the Debtor under Section §6.13 of the Plan other than the Eyman home located in Snohomish County where Karen Eyman and their children reside (but Mr. Eyman does not).

The State also makes the puzzling statement that "his decision to simply stop making payments without explanation requires appointment of a trustee." (Motion, page 5, line 5.) Further, the State requests the trustee "determine the reason for Debtor's Eyman's failure to make the requirements payments….". (*Id.* Line 7]. Is the State asking for a Trustee or a psychologist? Mr. Eyman simply ran out of money to pay both the State and pay for the Court's approved and allowed administrative claims in this bankruptcy.

Appointment of a Trustee is the State's excuse for having this motion before the Court. But given the limited powers that such a Trustee has over a post-confirmation estate, it is obvious that the State's true purpose is to have its' lien recorded against the marital/community property home. This request has already been denied once. ECF #337 (Audio of hearing held on 5/26/21) and #338 (Order Denying State's Motion for Relief from Stay and Other Relief).

Debtor's Response to Motion for Trustee     6     Vortman & Feinstein
2033 6th Ave, Suite 251
Seattle, WA 98121
206-223-9595

Case 18-14536-MLB    Doc 382    Filed 11/10/21    Ent. 11/10/21 10:44:11    Pg. 6 of 10

Under the State's interpretation of the default provisions, the newly appointed Trustee would have the ability [without any statutory authority] to administer [liquidate] the Eyman home for its' benefit, as it renews its' request to have the judgment recorded in Snohomish County against the Eyman home. The Debtor has stated that the home is a community asset of the estate under Section §541 of the Bankruptcy Code at the time of the filing of these proceedings and through filing and confirmation of the Plan. See the Debtor's Petition, Schedules and Statements filed under ECF #1; Debtor's 2nd Amended Disclosure Statement filed under ECF #210; and Debtor's 4th Amended Plan filed under ECF #270. The Debtor has asserted that the home was, therefore, available for the payment of allowed administrative claims in this estate, such as the professional fees the court has awarded and allowed to special counsel, Richard Sanders and Seth Goodstein, in defending the Debtor and the estate against the claims asserted by the State of Washington.

After deducting the selling costs, allowed exemptions, and administrative expenses, the net proceeds from the sale of the home would be available for distribution to the priority and general unsecured claims in the estate. This distribution would be governed by the terms of the confirmed Plan. Nevertheless, the State is trying to jump ahead of these allowed administrative expense liens and have its judgment recorded as a lien against the property, which the Debtor contends would violate the terms of the Plan. Under the Plan, the State is treated as a pre-petition general unsecured creditor – regardless of the fact that it later obtained a judgment against the Debtor. The State claims it is entitled to record its judgment

because under State law, in the absence of a bankruptcy, it would be allowed to record it. It wants to be treated as a secured creditor.

The State's request is on shaky ground to begin with, specifically whether the judgment and obligation applies to community property to the exclusion of the non-filing spouse's interest in the home. The Debtor's wife, Karen Eyman, was not a party to the state court litigation and was not named as a defendant or party in the State's action in state court. The resulting large judgment was rendered solely against the Debtor. And the marital community was not named as a defendant in the state court litigation either. As such, the State has brought an adversary proceeding in this case, filed under Adv. No. #21-01041, seeking declaratory relief that the home is the property of the estate and their state court judgment could be filed as a judicial lien on the home, such that any sale of the home would preserve any equity for the judgment (without consideration as to the non-filing spouse's interests). Karen Eyman, again, was not named or made a party to the adversary proceeding, just as she was not a party in the underlying state court proceedings. She has had to intervene in these proceedings to protect her interest in the home that has been seemingly trod on without her involvement or ability to protect her interest. The Court granted the right to intervene. (ECF #29, Adv. No. 21-01041.) Trial in that matter is scheduled for March 17, 2022.

Notwithstanding Mrs. Eyman's claims, the simple fact is that 11 U.S.C. §1141 trumps Wash. Rev. Code §§ 4.56.190 and 4.56.200. Neither of the cases cited by the State in Section III(B) (pages 5 to 6 of the Motion) involve a debtor in bankruptcy

Debtor's Response to Motion for Trustee      8      Vortman & Feinstein
2033 6th Ave, Suite 251
Seattle, WA 98121
206-223-9595

let alone the binding effects of Section §1141 on a creditors' actions post-confirmation. *In re Deal*, 85 Wash. App. 580, 933 P.2d 1084 (1997) involves surplus proceeds from a trustee's sale of debtor's homestead property under Washington law. *Seattle Mortg. Co. v. Unknown Heirs of Gray*, 133 Wash. App. 479, 136 P.3d 776 (2006) (and the cases cited internally) stands for the proposition that funds are disbursed "the first in time being the first in right." It cites no authority that would allow it to violate Section §1141's binding effect of the confirmed Plan and to treatment (regardless of the debtor's "default" status) inconsistent with the express terms of that confirmed Plan.

Finally, the State is asking in this motion its **identical relief asked for in the above cited pending adversary proceedings, Adv. #21-01041**. The current motion seems to be requesting the court grant them an end-run on the claims in that adversary, most importantly the claims of Karen Eyman, couched in a motion in the main bankruptcy case but seeking the same relief: allowing the State to record its judgment in Snohomish County to establish a lien on the Eyman home against the interests of Karen Eyman, without the benefit of Mrs. Eyman having the rights and benefits of the adversary proceedings (i.e. discovery, cross-examination, depositions, testimony, etc.). Quite simply, this is impermissible under the Bankruptcy Code. [Parenthetically, the Court will note that the Debtor and Mrs. Eyman are "not necessarily on the same page" as to the family home being an asset of the estate or available for the payment of Mr. Eyman's creditor claims. That is the subject matter

Debtor's Response to Motion for Trustee      9      Vortman & Feinstein
2033 6th Ave, Suite 251
Seattle, WA 98121
206-223-9595

of the adversary proceedings before this court in Adv. #21-01041.]

Accordingly, the current Motion should be denied.

RESPECTFULLY SUBMITTED this 9th day of November, 2021.

/s/ Larry B Feinstein
Larry B Feinstein, WSBA 6074
Attorney for Timothy D. Eyman, Debtor

Debtor's Response to Motion for Trustee  10  Vortman & Feinstein
2033 6th Ave, Suite 251
Seattle, WA 98121
206-223-9595

Case 18-14536-MLB    Doc 382    Filed 11/10/21    Ent. 11/10/21 10:44:11    Pg. 10 of 10