Honorable Judge Marc Barreca
Location: via ZoomGov
Hearing Date: March 9, 2022
Hearing Time: 10:00 a.m.
Response Due: March 2, 2022

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re:

TIMOTHY DONALD EYMAN,

Debtor.

NO. 18-14536-MLB

STATE OF WASHINGTON'S OBJECTION TO DEBTOR'S CLAIMED EXEMPTIONS

The State of Washington hereby objects as detailed below to the Debtor's exemptions claimed in his schedules filed on January 1, 2022 after conversion of his bankruptcy to Chapter 7. Additionally, the State agrees with and joins the Trustee in the objections filed by her and the State also requests an additional 90 days to complete its objections.

1. <u>Debtor Eyman's exemption on the Mukilteo home was determined when his Chapter 11 bankruptcy was filed.</u>

On January 1, 2022, Debtor Eyman filed his Chapter 7 schedules, which included his claimed exemptions in the Chapter 7 bankruptcy. Docket # 427. In his Chapter 7 schedules, Debtor Eyman changed the amount of the exemption on his Mukilteo home. In his Chapter 11 schedules, Debtor Eyman claimed a homestead exemption of $125,000 on the Mukilteo home. Docket #1, pg 23. The homestead statute in effect on that date limited the exemption to $125,000. Former Wash. Rev. Code § 6.13.030 (2007), *amended by* Laws of 2021, ch. 290, § 3. In the most recent schedules, Debtor Eyman changed the exemption on the Mukilteo home to 100% of the fair market value. Docket # 427 at pg. 11.

STATE OF WASHINGTON'S
OBJECTION TO EXEMPTIONS

1

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 438    Filed 02/16/22    Ent. 02/16/22 12:25:56    Pg. 1 of 8

On conversion, Debtor Eyman cannot change his initial claimed exemptions on the house. A debtor's exemptions are defined as of the petition date and case conversion does not affect the petition date. See 11 USC § 348(a). In this bankruptcy, November 28, 2018 was the petition date. Docket # 1. The recent conversion to Chapter 7 does not alter the date the petition was filed, the date the case was commenced, or the date of the order for relief in the original case. 11 USC § 348(a); *In re Ybarra*, 424 F.3d 1018, 1022 (9th Cir 2005) and *In re First Protection, Inc.* 440 B.R. 821, 832 (9th Cir. BAP 2010).

Courts have determined that when a case converts, the debtor's eligibility for exemptions remains controlled by facts existing on the petition date, not the conversion date. Thus, a debtor who amends their Schedule C post-conversion to claim revised or additional exemptions will be limited to the exemptions the debtor was eligible for under the facts in existence on the date the petition was filed. *Owen v. Owen*, 500 U.S. 305, 314, 111 S.Ct. 1833, 1838, n. 6, 114 L.Ed.2d 350 (1990); *In re Wolf,* 248 B.R. 365, 367–368 (9th Cir. BAP 2000); and *In re Kuceris* 557 B. R. 6, 10 (Bankr. D MA 2016). A debtor does not have the ability to claim exemptions which did not exist as of the commencement of the case or post-petition increases in the value of the property in excess of the amount initially claimed as exempt. *In re Hyman*, 967 F. 2d 1316, 1319, n. 2 (9th Cir. 1992). Finally, "the right to claim exemptions on the property vests solely in the filing spouse" and binds the nonfiling spouse. *In re Homan,* 112 B.R. 356, 359 (9th Cir. BAP 1989). Therefore, Karen Eyman cannot claim exemptions in this bankruptcy and is bound by what her spouse claimed at the time he petitioned for bankruptcy. Thus, Debtor Eyman's exemption claimed on the Mukilteo home for a homestead allocation of $125,000 cannot now be changed.

2. <u>Debtor Eyman's exemption should be limited to $160,375[1] pursuant to 11 USC § 522(q) due to the findings in the underlying action of *State v. Eyman.*</u>

---

[1] This is amount of the allowed exemption under 11 USC § 522(q) in November 2018 when the Debtor filed his bankruptcy petition.

STATE OF WASHINGTON'S
OBJECTION TO EXEMPTIONS

2

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 438    Filed 02/16/22    Ent. 02/16/22 12:25:56    Pg. 2 of 8

Even if Debtor Eyman were somehow allowed to change his initial claimed homestead exemption of $125,000 to the full market value, the homestead must be limited to $160,375, which is the aggregate exemption for "real or personal property that the debtor or dependent of the debtor claims as a homestead" when a debt arises from "fraud, deceit, or manipulation in a fiduciary capacity". 11 U.S.C. § 522(p)(1)(D) and (q)(1)(B)(ii). On February 10, 2021, in *State of Washington v. Eyman et al, (State v. Eyman)* Thurston County Superior Court case no. 17-2-01546-34, the Thurston County Superior Court entered the Court's Findings of Fact and Conclusions of Law and Injunction, finding Debtor Eyman liable for violations of Washington's Fair Campaign Practices Act (FCPA). Then, on April 15, 2021, a final judgment of $5,503,169.83 was entered in the case. Declaration of Susan Edison in Support of State of Washington's Motion for Relief from Stay, Docket # 323-2, Exhibit 1, Judgment in *State v. Eyman*. Additionally, Debtor Eyman incurred contempt sanctions of $348,250.00 for failing to provide to discovery from November 28, 2018 to April 23, 2020 in *State v. Eyman.* Docket # 280, Declaration of Jessica Buswell.

These findings in *State v. Eyman* document the campaign finance violations by Debtor Eyman, which were determined to be intentional, that led to the over $5 million judgment. Declaration of Tony Perkins in Support of State of Washington's Motion to Enforce Default Provisions, Docket # 386, Exhibit C*,* Court's Findings of Fact and Conclusions of Law and Injunction. The following are some of the highlights of the Conclusions of Law.

### III. CONCLUSIONS OF LAW

3.1 As an officer of VWMC [Voters Want More Choices], the proponent of I-1185, Defendant Eyman violated the FCPA [Fair Campaign Practices Act] twice by having the committee make two separate payments to Citizen Solutions, LLC and reporting that the purpose of the payments was to pay for signature gathering, when in fact they were to compensate Defendant Eyman. Each instance constituted concealment, and each violation carries a maximum penalty of $10,000, for a total of **$20,000**. RCW 42.17A.750(1)(c).

STATE OF WASHINGTON'S
OBJECTION TO EXEMPTIONS

3

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 438    Filed 02/16/22    Ent. 02/16/22 12:25:56    Pg. 3 of 8

3.2     Defendant Eyman accepted a payment from Citizen Solutions, LLC totaling $308,185.50. That payment was comprised of political contributions paid to Citizen Solutions, LLC, and were given to Defendant Eyman for his personal use. Defendant Eyman failed to report and actively concealed the true purpose of the payment, which was his personal use of those funds, in violation of RCW 42.l7A.235, .240, .435, and .445. The law permits a penalty equal to that amount under RCW 42.17A.750(l)(g), for a total of **$308,185.50**, in addition to the penalties above.

3.3     On four occasions, Defendant Eyman made concealed contributions to the I-517 campaign by making those payments to Citizens in Charge with the intent that they be spent on I-517 signature gathering without revealing the source of the funds. Each of those instances constituted concealment, which is a violation of the FCPA, and each violation carries a maximum penalty of $10,000, for a total of **$40,000**, in addition to the penalties above. RCW 42.17A.750(l)(c).

3.4     The four contributions to the I-517 campaign made by Defendant Eyman were concealed in violation of RCW 42.17A.235, .240, and .435. The amount of those contributions actually expended on the I-517 campaign, which was not reported as required and was actively concealed, totaled $182,806. The law permits a possible penalty equal to that amount under RCW 42.17A.750(1)(g), for a total of **$182,806**, in addition to the penalties above.

3.5     Defendant Eyman received $103,000 in loan repayments from Citizens in Charge, which were given to Citizens in Charge Foundation as contributions to the I-517 campaign and then transferred to Citizens in Charge before being paid to Defendant Eyman. The sources of the contributions that funded the $103,000 in payments were not reported as required and were actively concealed in violation of RCW 42.17A.235, .240, and .435. The law permits a possible penalty equal to that amount under RCW 42.17A.750(1)(g), for a total of **$103,000**, in addition to the penalties above.

…

3.8     Defendant Eyman received reportable contributions in support of ballot propositions in 58 months. For each month Defendant Eyman concealed contributions to himself in support of ballot propositions the law permits a maximum penalty of $10,000, for a total penalty of **$580,000**, in addition to the penalties above. RCW 42.17A.750(1)(c).

3.9     The concealed contributions received by Defendant Eyman and expended for his personal use totaled $837,502, which includes the $766,447 this court previously found as a discovery sanction and an additional $71,055 this court found as a matter of fact at trial. All of these

STATE OF WASHINGTON'S
OBJECTION TO EXEMPTIONS

4

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 438    Filed 02/16/22    Ent. 02/16/22 12:25:56    Pg. 4 of 8

funds were received to further his work on and in support of ballot propositions. The amounts and sources of these contributions were not reported as required and were actively concealed in violation of RCW 42.17A.235, .240, and .435. The law permits a penalty equal to the amount concealed under RCW 42.17A.750(l)(g), for a total possible penalty of **$837,502** in addition to the penalties above.

…

    3.17a. The Court finds Defendant Eyman's violations here are part of a pattern of violations, which resulted from a knowing and intentional effort to conceal, deceive, and mislead, and from collusive behavior as recognized by RCW 42.17 A.750(1 )( d)(i).

    b. The Court finds Defendant Eyman's violations here "had a significant and material impact on the public" pursuant to RCW 42.17 A.750(1)(d)(ii). By way of example, the public continued to contribute to the I-1185 campaign believing it was necessary to obtain enough signatures to qualify the initiative when in fact the signatures were already gathered and paid for, and the money was being collected to pay a kickback to Defendant Eyman. Donors may not have contributed funds if they had known they would be funneled to Defendant Eyman for personal use.

Based upon these Conclusions of Law, Debtor Eyman repeatedly violated the FCPA in his role as an officer in Political Action Committees, including Voters Want More Choices, by manipulating funds and deceiving contributors when he represented to contributors he was raising funds to support initiatives but instead was really supporting himself. The court found that, "Donors may not have contributed funds if they had known they would be funneled to Defendant Eyman for personal use."

    The trial court's conclusions of law above document Debtor Eyman's deceit, fraud and manipulation. Therefore, under 11 U.S.C. § 522(q)(1)(B)(ii), Debtor Eyman's homestead allocation must be limited to $160,375 (assuming it is not limited to $125,000 as argued above). Debtor Eyman's fraudulent, deceitful, and manipulative behavior are compounded by the fact that he was acting in a fiduciary capacity to his contributors. A fiduciary relationship arises when one party "occupies such a relation to the other party as to justify the latter in expecting that his interests will be cared for". *Liebergesell v. Evans,* 93 Wash.2d 881, 889–90, 613 P.2d 1170

STATE OF WASHINGTON'S
OBJECTION TO EXEMPTIONS

5

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 438    Filed 02/16/22    Ent. 02/16/22 12:25:56    Pg. 5 of 8

(1980). Fiduciary relationships arise regardless of the relationship in law between the parties. *Id.* at 434.

Here, Debtor Eyman's contributors to initiatives relied on him to be truthful concerning how the funds they contributed were used. Their reliance was justified in light of the fact that the state has enacted laws governing campaign finance disclosure and contributions. See Wash. Rev. Code 42.17A et seq. His contributors had every reason to believe they were protected by law when they donated to the causes he urged and his diversion of the funds to a use different than what he represented was a violation of this fiduciary relationship. Limiting the homestead exemption is appropriate because contributors had no reason to suspect that he would circumvent the law for his personal enrichment. Courts have limited homestead exemptions in similar cases. See *In re Bounds*, 491 B.R. 440 (Bankr. W.D. Texas 2013) (State court judgment finding that Chapter 7 debtor had sold unregistered securities in violation of Texas law, and had also committed fraud in connection with that sale, triggering the §522(q) statutory cap.)

3. Personal Property exemptions.

Additionally, the personal property exemptions claimed by Debtor Eyman exceed the amount that a debtor is allowed to claim under Wash. Rev. Code § 6.15.010(1)(d)(ii). The amount in this category is not to exceed three thousand dollars in value, of which not more than one thousand five hundred dollars in value may consist of cash. Debtor Eyman lists exemptions in this category of $10,612 in Bank of America accounts, $3,500 in security deposits for his apartment and $285 for household goods. These accounts are clearly property of the estate under the bankruptcy code and the terms of Section 6.13 Vesting of the Plan, which states that all property acquired during the chapter 11 bankruptcy automatically vests in the chapter 7 estate, which the Court upheld on conversion.

Debtor Eyman also has not established that the value of the three vehicles listed are accurate. The Blue Book value for all three cars exceeds the value listed in the schedules.

STATE OF WASHINGTON'S
OBJECTION TO EXEMPTIONS

6

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 438    Filed 02/16/22    Ent. 02/16/22 12:25:56    Pg. 6 of 8

Declaration of Tony Perkins in Support of State of Washington's Objection to Debtor's Claimed Exemptions (Perkins Decl.). Debtor Eyman's Chapter 7 schedules list a 2013 Ford Explorer among his vehicles. Debtor Eyman identifies the value of this vehicle as $2,000, but he provides no additional information about the vehicle's trim level, mileage, or condition. According to Kelley Blue Book, a 2013 Ford Explorer Sport Utility 4-cylinder with 2-wheel drive in fair condition and 117,159 miles is valued approximately $7,487 at trade in. As the Explorer's trim level, features, and condition improve, the Kelley Blue Book value increases. At the same mileage, a 2013 Ford Explorer Sport SUV with 4-wheel drive in excellent condition has a trade-in value of approximately $14,559. Perkins Decl. ¶¶ 10-11.

Debtor Eyman similarly lists a 2013 Mercedes C300 among his vehicles, and values it at $6,000. He states that the Mercedes is registered in his spouse's name, but provides no other information. According to Kelley Blue Book, in fair condition, and with slightly more than 100,000 miles, both the sport sedan and luxury sedan versions of the 2013 Mercedes C300 are valued approximately $9,300 at trade-in. In excellent condition and with the same mileage, either vehicle would have a trade-in value of at least $12,000. Perkins Decl. ¶¶ 12-13.

Finally, Debtor Eyman lists a 2012 Chrysler Touring 200 in his schedules. Debtor Eyman states that this vehicle is valued at $2,000, but he does not provide any other information, including whether the vehicle is the 2D Convertible trim or the 4D Touring Sedan. With slightly less than 100,000 miles and in fair condition, Kelley Blue Book gives the 2D Convertible version of the 2012 Chrysler Touring 200 a $2,842 trade-in value. With the same mileage and in excellent condition, the more valuable 4D Touring Sedan is valued $6,391 at trade-in. Perkins Decl. ¶¶ 14-15

4. <u>It is not established that Debtor is entitled to any IRA exemption</u>.

State reserves to challenge the IRA exemption that Debtor Eyman claims while the Trustee's further investigation occurs.

STATE OF WASHINGTON'S
OBJECTION TO EXEMPTIONS

7

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 438    Filed 02/16/22    Ent. 02/16/22 12:25:56    Pg. 7 of 8

5. The State joins in the request for an additional 90 days to file objections.

Given that the Trustee will continue to do an investigation and given the revised exemptions, the State also requests an additional 90 days.

6. Conclusion.

Debtor Eyman's exemptions are limited to the exemptions which he was eligible for under the facts in existence on the date the petition was filed. Therefore, he cannot claim a 100% market value of the home and is limited to the $125,000 that he initially claimed. In the alternative, should the court disagree, the Superior Court's findings establish Debtor Eyman's conduct constituted fraud, deceit or manipulation in his fiduciary capacity to contributors. Accordingly, these factors limit the homestead allocation under 11 U.S.C. 522(q)(1)(B)(ii) to a maximum of $160,375. Additionally, Debtor Eyman has claimed several personal property exemptions in amounts that exceed the state exemption caps and has also undervalued all three of the vehicles he attempts to exempt. The State objects to the exemptions claimed by Debtor Eyman, specifically and including the homestead and personal property exemptions.

For the foregoing reasons, the State respectfully requests this court to limit (a) the homestead exemption to the $125,000 amount dictated by law at the time he filed his petition or alternatively, to the $160,375 cap dictated by 11 U.S.C. 522(q)(1)(B)(ii); and (b) limit his personal property exemptions for each such category to amounts set by the laws in effect at the time of his bankruptcy petition.

DATED this 16th day of February, 2022.

ROBERT W. FERGUSON
Attorney General

/s/ Susan Edison
SUSAN EDISON, WSBA No. 18293
DINA YUNKER FRANK, WSBA No. 16889
ERIC S. NEWMAN, WSBA No. 31521
  *Assistant Attorneys General*
Attorneys for the State of Washington

STATE OF WASHINGTON'S
OBJECTION TO EXEMPTIONS

8

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

Case 18-14536-MLB    Doc 438    Filed 02/16/22    Ent. 02/16/22 12:25:56    Pg. 8 of 8