In re: Timothy D. Eyman, Bankruptcy Case No. 18-14536-MLB

# EXHIBIT A

to Declaration of S. Todd Sipe
in Support of State's Objection
to Applications For Attorneys' Fees

FILED
SUPREME COURT
STATE OF WASHINGTON
9/14/2021
BY ERIN L. LENNON
CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>    v.<br><br>TIM EYMAN, et al.,<br><br>          Appellants. | No. 1 0 0 0 4 0 - 5<br><br>RULING DENYING MOTION FOR STAY PENDING APPEAL |

      Petitioner Tim Eyman is a well-known promoter of citizen ballot initiatives. Acting on an investigation by the Public Disclosure Commission, the State filed an action against Mr. Eyman in Thurston County Superior Court in 2017, alleging numerous violations of the Fair Campaign Practices Act (FCPA), chapter 42.17A RCW, including kickbacks from a signature gathering company and diverting campaign funds to personal use, concealing and failing to report more than $760,000 in campaign contributions. Mr. Eyman failed to respond to repeated discovery requests, and was found to be in contempt of court multiple times. The court appointed a special master (a retired superior court judge) to recommend and assess contempt sanctions. Mr. Eyman gradually racked up increasing daily penalties amounting to hundreds of thousands of dollars. At one point Mr. Eyman sought discretionary review of orders denying his motion to vacate discovery sanctions and a summary judgment order, but I denied direct discretionary review in October 2020 (No. 98743-2).

The matter eventually proceeded to a nine-day bench trial beginning on November 16, 2020, and ending on January 21, 2021. The superior court entered findings of fact and conclusions of law on February 10, 2021. Among other things, the court found that Mr. Eyman committed "numerous and blatant" FCPA violations and that his conduct exhibited a pattern of knowing and intentional efforts to conceal, deceive, and mislead. The court found that Mr. Eyman acted as a continuing political committee and failed to register as such in violation of the FCPA.

The court calculated potential penalties of $5,754,987.43 but eventually entered judgment for a lesser amount on April 16, 2021, imposing a penalty of $2,601,502.81. The court declined to assess treble damages under RCW 42.17A.780 but did award the State costs and attorney fees. The total judgment amount was $2,891.667.02. The court denied reconsideration on June 15, 2021.

The judgment included several injunctive provisions: (1) barring Mr. Eyman from misleading contributors or potential donors while fundraising; (2) barring him from receiving payments from anyone who provides or plans to provide paid services to a political committee associated with him; (3) requiring him to report gifts, donations, or other funds he receives for work in support of ballot initiatives; (4) barring him from managing, controlling, negotiating, or directing financial transactions of any kind for any political committee; (5) prohibiting him from serving as a treasurer or deputy treasurer of any political committee; (6) barring him from approving disclosure statements; (7) prohibiting him from accepting or taking possession of contributions; (8) prohibiting him from binding any political committee; (9) barring him from participating in decisions to transfer funds from one political committee to another, and (10) prohibiting him from directly soliciting contributions for himself or his family to support his political activities without establishing a political committee and reporting contributions to such a committee. It appears nothing in the judgment prohibits

Mr. Eyman from advocating in support of ballot measures. For example, Mr. Eyman is listed as the sponsor of numerous proposed ballot initiatives filed with the secretary of state in 2021. *See* https://www.sos.wa.gov/elections/initiatives/referenda.aspx?y=2021&t=p. (visited Sept. 9, 2021).

On July 15, 2021, Mr. Eyman filed a notice of appeal directly in the superior court. The notice of appeal was forwarded to this court, where Mr. Eyman seeks direct review. This court will necessarily decide whether to retain the appeal in this court or transfer it to the Court of Appeals for a decision in the first instance. RAP 4.2. There is also a question whether Mr. Eyman's appeal is untimely, at least in part, because he seeks review of numerous superior court decisions in this matter going back to March 16, 2018. The more immediate matter is Mr. Eyman's motion to stay the nonmonetary portions of the superior court's judgment.[1]

An appellate court may issue a stay of superior court proceedings in a civil case under either RAP 8.1(b) or RAP 8.3. Under the former rule, the appellate court will "(i) consider whether the moving party can demonstrate that debatable issues are presented on appeal and (ii) compare the injury that would be suffered by the moving party if a stay were not imposed with the injury that would be suffered by the nonmoving party if a stay were imposed." RAP 8.1(b)(3). Alternatively, in either civil or criminal cases, this court "has authority, before or after acceptance of review . . ., to insure effective and equitable review, including authority to grant injunctive or other relief to a party." RAP 8.3. The purpose of this rule is to provide appellate courts with authority to provide preliminary relief so as to preserve the fruits of a successful appeal. *Wash. Fed'n of State Emps. v. State*, 99 Wn.2d 878, 883, 665 P.2d 1337 (1983). The appellate court applying this rule undertakes an analysis similar to that applied with RAP 8.1(b),

---

[1] Enforcement of the monetary portion of the judgment is stayed as a result of Mr. Eyman's bankruptcy petition. No. 18-14536-MLB, USBC WDWA.

pondering whether debatable issues exist and a stay is necessary to preserve the fruits of a successful appeal, and considering the equities of the circumstances. *Confederated Tribes of Chehalis Reservation v. Johnson*, 135 Wn.2d 734, 759, 958 P.2d 260 (1998).

One of the public policies on which the FCPA is grounded is that "political campaign and lobbying contributions and expenditures be fully disclosed to the public and that secrecy is to be avoided." RCW 42.17A.001(1). It is also public policy that "the public's right to know of the financing of political campaigns and lobbying . . . far outweighs any right that these matters remain secret and private." RCW 42.17A.001(10). The superior court determined that Mr. Eyman egregiously violated the FCPA by failing to report his activities as a continuing political committee and by secretly lining his pockets with contributions intended to support voter initiatives. As indicated, the court imposed injunctive provisions intended to thwart further financial improprieties.

Mr. Eyman argues that as an individual he cannot be a "continuing political committee" within the meaning of the FCPA. Apart from exemptions that are not relevant here, a "political committee" is "any person . . . having the expectation of receiving contributions . . . in support of . . . any ballot proposition." RCW 42.17A.005(041).[2] Mr. Eyman cannot tenably argue he was not a political committee at the relevant times.

A "continuing political committee" is a "political committee that is an organization of continuing existence not limited to participation in any election campaign or election cycle." RCW 42.17A.005(14). Mr. Eyman's activities subject to this dispute encompassed multiple ballot measure campaigns and were arguably continuous in nature. It seems the central point of debate on this issue is whether

---

[2] The current versions of statutory definitions are used for clarity. Previous versions of the statute used the same definitional language.

Mr. Eyman was operating as an "organization," a term not defined by the FCPA. The dictionary most commonly used in judicial decision making defines "organization" variously as "something organized" . . . "a group of people that has a more or less constant membership" . . . "a body of administrative officials." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1590 (2002). This tends to support the view that an "organization" is comprised of a group of individuals; however, an individual may form a business organization, such as a limited liability company or a corporation. Furthermore, the FCPA must be "liberally construed to promote complete disclosure of all information respecting the financing of political campaigns and lobbying." RCW 42.17A.001. Applying this liberal reading, a "political committee" is necessarily a type of "organization" even if it consists of one individual. Whether Mr. Eyman is a "continuing political committee" may be debatable, but his argument that he is not is less than compelling.

Mr. Eyman asserts the superior court's injunctive orders violate his First Amendment rights. The superior court may enjoin a person from violating the FCPA or order a person to comply with the Act. RCW 42.17A.750(1)(i). Here it seems readily apparent that the superior court's injunctive provisions are aimed at preventing Mr. Eyman from again violating the FCPA by means of diverting campaign contributions to his personal use. Nothing in the order prevents Mr. Eyman from speaking out on political and social issues or sponsoring ballot measures, as he has done many times in 2021. Mr. Eyman's fleeting argument for the first time on appeal that he is the equivalent of a charitable organization is not well taken. *See* RAP 2.5(a)(3) (an appellate court may consider an issue raised for the first time on appeal if it involves a manifest error affecting a constitutional right).

Assuming there are debatable issues revolving around Mr. Eyman's status as a continuing political committee, the scope of the court's injunctive relief, and potential

First Amendment implications, not imposing a stay will cause some injury to Mr. Eyman to the extent he will be deprived of mechanisms capable of delivering political donor money into his pockets. In contrast, the injury to public policy if a stay is imposed may be severe: the resumption of Mr. Eyman's efforts to circumvent the reporting requirements of the FCPA for his own financial benefit. The strong public interest in transparency in the handling of campaign finances will be better protected if a stay is not imposed while the appeal is pending. Allowing the injunction provisions to remain in place will not deprive Mr. Eyman of the fruits of a successful appeal, since presumably he may resume the enjoined activities if he succeeds.

As indicated, there is a question, but not a motion, regarding the timeliness of Mr. Eyman's appeal. He filed a corrected ("ERRATA") notice of appeal in the superior court on July 16, 2021. The notice appealed the superior court's June 15, 2021, order denying reconsideration. Appeal of that order falls within the 30-day deadline specified in RAP 5.2(a). But Mr. Eyman also sought review of orders entered on April 16, 2021 (the judgment and the separate order granting the State's fee petition); February 10, 2021 (findings of fact and conclusions of law); June 5, 2020 (order denying motion to vacate discovery order and summary judgment); March 13, 2020 (order denying motion to reconsider partial summary judgment and revised order of September 13, 2019); February 21, 2020 (order granting State's motion for partial summary judgment); October 2, 2019 (order denying motion for reconsideration); September 13, 2019 (order granting State's motion non-monetary sanctions); October 31, 2018 (order denying motion to purge contempt); September 7, 2018 (order denying motion for reconsideration of order on bank records); August 21, 2018 (orders granting State's discovery motion and denying Mr. Eyman's motion for a protective order); and March 16, 2018 (order granting motion to adopt special master's recommendation and assess contempt sanctions). Mr. Eyman further sought review of what he described as

"all other Trial Court rulings which violate his First Amendment freedom to associate with others to advance their views," referencing a list of more than 120 superior court rulings and orders entered between October 20, 2017, and April 14, 2021. The Clerk of the Court directed the parties to file memoranda simultaneously discussing timeliness of the appeal.[3]

"A notice of appeal must be filed in the trial court within the longer of (1) 30 days after the entry of the decision of the trial court that the party filing the notice wants reviewed, or (2) the time provided in section (e)." RAP 5.2(a). Subsection (e) adds an additional 30 days after a decision on a timely motion filed after entry of an appealable order, including a motion for reconsideration or new trial filed under CR 59. RAP 5.2(a)(2), 5.2(e). Reading RAP 5.2(a)(2) and (e) in relation to each other, an aggrieved party may appeal a judgment more than 30 days after it was entered if that party timely moved for reconsideration and the motion was denied. *Buckner, Inc. v. Berkey Irrig. Supply*, 89 Wn. App. 906, 911-12, 951 P.2d 338 (1998). Adding some level of confusion to the rules, however, an appellate court will review a final judgment not designated in a notice of appeal if the appellant timely filed a motion for reconsideration. RAP 2.4(b). In other words, it appears an appellant may file a notice of appeal of a judgment prior to filing a motion for reconsideration, although the superior would need permission from the appellate court before ruling on the motion. RAP 7.2(e). On the other hand, an appeal from a final judgment brings up for review a ruling on a motion for reconsideration. RAP 2.4(f). It may be that the rule drafters built flexibility into the rules in relation to the interplay between a final judgment and a motion for reconsideration. Such a reading is consistent with the policy to interpret the

---

[3] After these memoranda were filed, Mr. Eyman filed a pleading titled "APPELLANT'S REPLY ON APPEALABILITY," taking issue with the State's analysis of the timeliness issue. The court did not ask for responsive briefing on this question. The so-called reply is rejected for filing by way of this ruling.

rules liberally "to promote justice and facilitate the decision of cases on the merits." RAP 1.2(a).

The State asserts Mr. Eyman's notice of appeal is untimely with respect to any superior court decision entered prior to the June 15, 2021, order denying reconsideration. The State relies on *Denney v. City of Richland*, 195 Wn.2d 649, 462 P.3d 842 (2020), where this court, interpreting the interplay between RAP 2.2(a)(1) and RAP 5.2(a)(1), held that a party must timely appeal a final judgment on the merits even if the superior court has not yet made a decision on attorney fees. *Id*. at 653-54. But it appears the appellant in that case did not move for reconsideration, thus there was no discussion of RAP 5.2(a)(2) and 5.2(e). *See Buckner*, 89 Wn. App. at 911-12 (explaining that a motion for reconsideration effectively extends the time for filing an appeal of a judgment). In this instance, Mr. Eyman timely moved for reconsideration of the judgment and apparently also the order granting the State's petition for fees, denial of which effectively extended the time limit for appeal of the judgment. RAP 5.2(e). As for the judgment, it expressly incorporated the findings of fact and conclusions of law entered February 10, 2021. The appeal appears to be timely as to the judgment, award of attorney fees, and the findings of fact and conclusions of law. As for interlocutory orders entered prior to judgment, an appellate court will consider orders or rulings not designated in the notice of appeal if such orders or rulings prejudicially affected the decisions designated in the notice. RAP 2.4(b).[4] Here, Mr. Eyman designated these earlier orders even though it was probably not necessary.

In sum, the appeal in its entirety appears to be timely; however, this court may revisit the question in making its determination whether to retain the appeal in this court or refer it to the Court of Appeals in the first instance.

---

[4] My ruling in No. 98743-2 (Oct. 15, 2020) concluded that Mr. Eyman's motion for discretionary review was untimely with respect to certain interlocutory decisions. At issue here is the timeliness of the appeal.

The motion for a stay is denied.

					_____
					COMMISSIONER

September 14, 2021