IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re:<br>TIMOTHY DONALD EYMAN,<br>　　　　Debtor. | Bankruptcy Case No. 18-14536-MLB<br><br>GOODSTEIN LAW GROUP'S RESPONSE TO THE STATE OF WASHINGTON'S OBJECTION TO GLG 5TH FEE REQUEST |

Goodstein Law Group PLLC ("GLG") submits and moves the Court to accept this slightly over length Response to the State and Trustee's Objection to GLG's 5th Fee Request.

## I. INTRODUCTION

<u>State Objections</u>. The State objects on the grounds that GLG has not shown that a portion ($5302.50) of the requested $67,842.45 fees were of benefit. *State Objection* DKT # 444 at 1:18 and that GLG's 5th Fees are not administrative. All of GLG's 5th Fee request qualify as administrative claims according to the State's admitted reference to the Plan that governs such claims, Sections 301, because post-confirmation, GLG services helped to further consummation of the plan provisions and benefited the both the Debtor and the estate, and pursuant to Section 348(d), all as described more fully below. <u>Trustee Objections</u>. The Trustee cites three rationales for objecting, none have merit. The Trustee claims that the fees should be denied based on lack of disclosures, because the fees were not shown to be necessary and because GLG is no longer "disinterested". None of the cases cited by the Trustee are on point nor do they support a contention that fees should

Goodstein Law Group PLLC's Response to State & Trustee Objection to GLG 5th Fee Request

Page 1 of 7

**GOODSTEIN
LAW GROUP** PLLC
501 South G Street
Tacoma, WA 98405
Fax: (253) 779-4411
Tel:(253) 779-4000

Case 18-14536-MLB    Doc 448    Filed 03/18/22    Ent. 03/18/22 19:01:18    Pg. 1 of 7

be denied. The cases on disclosure and disinterest all pertain to non-disclosures of pre-petition or per-appointment fees or retainers paid, not on point here. Further in *In re Combe* expressly cited by Trustee, fees were not denied, they were reduced by 10%, after the Court found a grievous lack of pre-appointment disclosure, facts not present here.

## II. STATEMENT OF RELEVANT FACTS

Debtor's bankruptcy proceeding commenced by the filing of a voluntary Chapter 11 petitions on 2018 (Docket #1). An application was filed to allow Mr Sanders and GLG to represent Debtor <u>pursuant to Section 327</u> of the United States Bankruptcy Code (the "Code"), and Fed. R. Bankr. P. 2014. (DKT#141).[1] GLG was appointed because Debtor was embroiled in contentious litigation with the State of Washington in two cases in the Thurston Co. Superior Court[2]. The Debtor was struggling to defend himself pro se. GLG's defense services and fees were Court-authorized as the State had filed a Proof of Claim for over $2 million plus additional amounts to be proven at trial. GLG's services were to assist in limiting the estate's financial exposure and to ensure that the claim amount is accurately assessed. GLG thereafter diligently defended Debtor in highly complex litigation, and four fee awards have been Court-approved.[3] GLG filed two of the Court Fee Orders with the Snohomish County Auditor. (Docket #294 and #316). This Auditor-filing drew an objecting Motion from the State in a companion Adversary proceeding. GLG thereafter "released" the recorded Orders, resulting in this Court's determination that the issues alleged due to the filing of the Orders were "moot". DKT # 68 at 3:2-5, (adversarial proceeding).[4]

---

[1] The order entered on October 16, 2019 (Docket #158), with effective date of September 25, 2019.
[2] Washington v. Eyman et al., No. 17-2-01546-34, and Washington v. Tougher to Raise Taxes, et. al., No. 16-2-03891-34.
[3] The Court granted an Order allowing fee payment of $118,605.52 to GLG as a result of its first Interim fee request (Docket # 242). The Court granted a second Order allowing fee payment of $45,445.20 to GLG as a result of its second Interim fee request (Docket # 294).
In support of a third Order, GLG showed it had expended 619.8 hours of work ($216,401.00) and incurred costs in the amount of $2,356.14 for a total amount of $218,757.14, which supported its Third Interim Period fee request from April 9, 2020 to December 27, 2020. (Docket #311). Accordingly, on January 19, 2021, the Court entered an Order approving fee payment of $218,757.14 (Docket# 316). GLG filed a 4th Fee Request (DKT# 322 on May 3, 2021 to which no party objected, resulting in the granting of an Agreed Order Awarding the Fees of $36,505.20.
[4] Within its Response to the State's SJ Motion (Dct# 59), in that adversary proceeding, GLG expressly stated, "GLG's Fee Orders are Chapter 11 administrative expenses. As such, the GLG Fee Orders have priority over the State's unsecured claims, whether recorded or not. Release of the County recordings also renders this State requested relief moot as well."

Goodstein Law Group PLLC's Response to State & Trustee Objection to GLG 5th Fee Request    Page 2 of 7

**GOODSTEIN LAW GROUP** PLLC
501 South G Street
Tacoma, WA 98405
Fax: (253) 779-4411
Tel:(253) 779-4000

Case 18-14536-MLB    Doc 448    Filed 03/18/22    Ent. 03/18/22 19:01:18    Pg. 2 of 7

On December 17, 2021, this case was converted to a Chapter 7 with Virginia Burdette as Chapter 7 Trustee. At the time of conversion, GLG had outstanding fees incurred during the period post-confirmation of the Chapter 11 and pre-conversion to Chapter 7. Because GLG is now prevented from collecting those pre-conversion fees from the Debtor, GLG in this 5th fee application seeks an order approving fees incurred post-confirmation and up to conversion to Chapter 7. Post-conversion to Chapter 7, GLG filed a Claim for its attorney fees already awarded by the Court and also characterizes the GLG Claim as priority administrative claims. See Dec of Lake. When the Trustee inquired whether the GLG claim included amounts already paid, GLG advised that:

> … Our next steps will be to file for a 5th Motion for Fees for the Chapter 11 expense work between dates of April 29, 2021 to date of conversion to Chapter 7 (12/17/21). We will take the sum of all fee Orders, deduct the payment amounts received and will amend our claim accordingly.
> ***Please let us know if you have any questions or concerns about this plan of action***.
> Thank you again.

The Trustee replied, "Sounds good".[5]

### III. ANALYSIS

**A.    GLG 5th Fee Order Is An Administrative Claim.**

The application to allow Mr Sanders and GLG to represent Debtor was filed pursuant to Section 327 of the United States Bankruptcy Code (the "Code"), and Fed. R. Bankr. P. 2014. (Docket #141). Section 327(a) allows with Court approval, one or more attorneys, … that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties. (Docket #141 at 2 of 4). Applying 11 USC 507(a)(1)(c) and (a)(2), *Priorities*, GLG fees are a Section 327 administrative expense under 11 USC 503(b)(1)(A)[6]. The State concedes in its Motion

---

[5] See true and correct copy of Email exchange dated February 9, 2021, attached as **Exhibit C** to Dec of Lake.
[6] 11 USC 503(b)(1)(A):" the actual, necessary costs and expenses of preserving the estate including—(i) wages, salaries, and commissions for services rendered after the commencement of the case." This type of administrative expense has priority over the State's unsecured claim, which may be why the State is attacking that characterization. The Code, through sections 326-331 and 503, regulates both professional compensation and administrative expenses paid from the estate in a comprehensive way that parties are not free to rewrite. See *In re Lehman Bros. Holdings, Inc.,* 508 B.R. 283, 294 (S.D.N.Y. 2014).

Goodstein Law Group PLLC's Response to State & Trustee Objection to GLG 5th Fee Request    Page 3 of 7

**GOODSTEIN LAW GROUP** PLLC
501 South G Street
Tacoma, WA 98405
Fax: (253) 779-4411
Tel:(253) 779-4000

Case 18-14536-MLB    Doc 448    Filed 03/18/22    Ent. 03/18/22 19:01:18    Pg. 3 of 7

at 2: 17-24 : "The provisions in the plan that govern administrative claims are as follows:

> Section 3.01 Administrative Claims. "Administrative Claim" means a claim for payment of costs and expenses of administration pursuant to 11 U.S.C. § 503(b), including: (i) the actual and necessary costs and expenses incurred on or after the petition date and through the Effective Date; (ii) compensation and reimbursement for legal, accounting, and other professional services that have been allowed pursuant bankruptcy court order; (iii) all fees and charges assessed against the Estate pursuant 28 U.S.C. § 1930; (iv) all other Claims entitled to Administrative Claim status pursuant to an order of the bankruptcy court; and (v) the post-petition claims of the State that are to be paid pursuant to this Court's order dated November 27, 2019 (ECF #180)."

GLG 5th Motion Fees qualify as Section 3.01 (ii) Administrative Claims as they are "compensation" for legal services allowed pursuant to bankruptcy order. In support, GLG also adopts and incorporates by reference the reasoning in Vortman & Feinstein ("V&F") Response to Objections, filed contemporaneously hereto, on the point that attorney's fees for post confirmation legal services performed for a debtor's estate are compensable as administrative expenses under 11 U.S.C. § 503(b)(2) and reference to *In re Sultan Corp.,* 81 B.R. 599, 602 (9th Cir. BAP 1987).[7] The *Sultan* court relied on *In re Tri-L Corp.* 65 B.R. 774 (Bankr. D. Utah 1986), that allowed an administrative claim for post-confirmation attorney fees of the reorganized debtor <u>after conversion to a Chapter 7</u>. The *Tri-L Corp.* court found that allowing the administrative claim was proper because the post confirmation legal services were performed in aid of the Chapter 11 plan and pursuant to the plan's directives and because the court properly retained jurisdiction. 65 B.R. at 779. [8]

Similarly, here this Court appointed GLG for the express reason of defending debtor and to preserve the estate against the State's prosecution. The allowed purpose of limiting the financial exposure of the estate and ensuring that the State's claim amount (if any) is

---

[7] In *Sultan*, a creditor argued that post confirmation expenses should be denied as an administrative expense priority under Section 503(b) because the estate ceases to exist upon vesting in the debtor at the time of confirmation. The court disagreed and stated that "post confirmation attorney's fees are governed by Section 503(b)(2) which makes no reference to the estate. Section 503(b)(2) provides that allowed administrative expenses include ' . . . compensation and reimbursement awarded under section 330(a) . . . .'" 81 B.R. at 601. The court further noted that the language of Sections 330 and 327 do not require that the fees be incurred by the estate. 81 B.R. at 601. The court in *Sultan* also noted that attorney's fees need not be incurred by the estate to be administrative expenses under Section 503(b)(2). Id.

[8] "Because the plan's distribution to creditors was to be the result of the sale of the subject property, [the court] concluded that the plan contemplated that attorney's fees would be incurred on behalf of the debtor to determine the size and distribution of the sale's proceeds. Since such fees were contemplated by the plan, the fees must be administrative expenses." 81 B.R. at 602.

Goodstein Law Group PLLC's Response to State & Trustee Objection to GLG 5th Fee Request

Page 4 of 7

**GOODSTEIN LAW GROUP** PLLC
501 South G Street
Tacoma, WA 98405
Fax: (253) 779-4411
Tel:(253) 779-4000

Case 18-14536-MLB    Doc 448    Filed 03/18/22    Ent. 03/18/22 19:01:18    Pg. 4 of 7

accurately assessed in relation to other creditors remained in effect post-conversion and continues even through today. While judgement was obtained at the trial court level, GLG continues to pursue a meritorious appeal against the unprecedented action. See Copy of Appellate brief attached to Dec of Carolyn Lake as **Exhibit A**. The bloated penalty and attorney fee award together total $**5,503,169.83,** see pleading attached to Dec of Carolyn Lake as **Exhibit B**. The benefits to the Estate and the debtor and even now the creditors in overturning that award are obvious. GLG's 5th award fees incurred post-confirmation continued to further consummation of the plan provisions as they benefited the both the Debtor and the estate and <u>are</u> entitled to administrative priority. GLG also asserts that the State's reliance on *In re Benjamin Coal Company,* 978 F.2d 823 9th Cir. 1992), is misplaced. There, Benjamin had a Chapter 11 administrative claim with super-priority under Section 364(c)(1) for amounts he loaned back to the debtor under a lease assignment agreement. When the case converted to converted to Chapter 7, he did not timely file a claim. The Court disallowed the late claim.[9] The Court noted that Benjamin <u>no longer had an existing administrative claim</u> when the case converted to Chapter 7 and on this point Benjamin ***actually supports GLG's position,*** "<u>Section 348(d) unquestionably would have preserved an administrative claim</u> for Benjamin if he had possessed an administrative claim at the time of the conversion to Chapter 7……*.*[10] Further *Benjamin* supports that Section 503(b) administrative expense claims, as is GLG's, hold special status. "Section 348(d) relegates all claims in a converted case to pre-petition status, <u>except Section 503(b)</u> administrative

---

[9] "Benjamin therefore argues that administrative claims, such as his own claim in BCC's Chapter 11 case, are granted a special continuing administrative priority by Section 348(d);.In addition, Benjamin argues that the bankruptcy court's allowance of the lease assignments in the Chapter 11 case constituted an ***informal proof of claim***. Therefore, pursuant to Bankruptcy Rule 1019(3), Benjamin's claim was "actually filed" in the Chapter 11 case, and "deemed filed" in the Chapter 7 case, obviating any need for a new filing prior to the bar date in the Chapter 7 case. Benjamin's argument in the final analysis is incorrect." *Benjamin Coal Co., In re*, 978 F.2d 823 (3rd Cir. 1992)

[10] <u>Section 348(d) unquestionably would have preserved an administrative claim for Benjamin if he had possessed an administrative claim at the time of the conversion to Chapter 7</u>..... When the Chapter 11 plan of BCC was confirmed, Benjamin simply no longer had an "administrative claim"--he then had only the contractual claim upon the debtor, i.e., the right to one-eighth payment 15 days after confirmation and the right to full payment by June 30, 1986, that was created for him in the plan." *Benjamin Coal Co., In re*, 978 F.2d 823 (3rd Cir. 1992)

Goodstein Law Group PLLC's Response to State & Trustee Objection to GLG 5th Fee Request

Page 5 of 7

**GOODSTEIN LAW GROUP** PLLC
501 South G Street
Tacoma, WA 98405
Fax: (253) 779-4411
Tel:(253) 779-4000

Case 18-14536-MLB    Doc 448    Filed 03/18/22    Ent. 03/18/22 19:01:18    Pg. 5 of 7

expense claims..."[11]

### B. GLG Remains "Disinterested" And Trustee Cases On Disclosure Are Not Applicable.

The *In re Combe* case cited by Trustee is not on point, as it addresses a fairly devious pre-application failure to disclose, and where, as that Court described, "the parties collectively hatched a plan to serve their needs". The *Combe* parties failed to disclose pre-application fees owed to the attorney subject of the appointment and that debtor and related parties paid the fees so that debt would not be disclosed. Nothing close to that happened here.[12] And, in *Combe*, – the attorney fees were not denied, they were reduced by 10%.[13] The *Combes* attorney also failed to comply with "Disclosures under Rule 2014(a)." It was this undisclosed conflict <u>at the time of appointment</u> for which the Court took offense.[14] See also *In re Lewis, In re*, 113 F.3d 1040 (9th Cir. 1997) which also involved Section 329 and Rule 2016(b) non-disclosures. Again, the focus was misrepresentation at

---

[11] Id.

[12] In re Combe Farms, Inc., 257 B.R. 48 (Bankr. Idaho 2001), " This is Debtor's second Chapter 12 case. Applicant also served as Debtor's attorney in a prior case (No. 99-02327) filed on September 10, 1999. That case was dismissed without confirmation of a plan on January 20, 2000 after it became apparent that Debtor exceeded the statutory debt limitations for eligibility for Chapter 12 relief. Applicant contends that at the time of the dismissal, Debtor owed him $23,869.50 for his services. Applicant represents that Debtor's principals, the Combes, wanted to attempt another reorganization, and they wanted Applicant to again act as the company's attorney. However, the parties realized that because Applicant held a large unsatisfied claim against Debtor, he could not qualify as "disinterested" as mandated by 11 U.S.C. § 327(a) and could not serve as counsel. See 11 U.S.C. § 101(14) (defining "disinterested person" as a person that is not a creditor). Applicant also had a more pragmatic concern in that he was worried about not getting paid for the fees already "on the books." Given time, the parties collectively hatched a plan to serve their needs. First, Combes personally paid Applicant $2,000 to apply to his outstanding bill. Next, Applicant agreed to "write off" about $11,600 from the balance due on that account. Applicant further agreed to release the company from any further liability for the outstanding fees. In return, Combes executed a personal promissory note for that balance, and secured it with a deed of trust on their personal residence.2 Finally, Combes also gave Applicant $5,000 as a retainer for services he would render prior to commencement of the second Chapter 12 case..." In re Combe Farms, Inc., 257 B.R. 48, 51-52 (Bankr. Idaho 2001).

[13] "In the exercise of the Court's discretion, and in another effort to give substance to the requirements of the rules, the Court concludes Applicant's fee request should be reduced by ten percent as a sanction for the tardy filing of the Rule 2016(b) disclosure form...." In re Combe Farms, Inc., 257 B.R. 48 (Bankr. Idaho 2001).

[14] Applicant's status as a significant creditor of Debtor's stockholders and officers, and his fee arrangement with them, certainly constitutes a "connection" with other "parties in interest" in the bankruptcy case for purposes of disclosure under Rule 2014(a).14 The existence of this arrangement naturally leads to other questions about the parties' relationships, and was relevant to the Court's determination concerning whether Applicant should be employed by Debtor...
In re Combe Farms, Inc., 257 B.R. 48, 54-55 (Bankr. Idaho 2001)

Goodstein Law Group PLLC's Response to State & Trustee Objection to GLG 5th Fee Request        Page 6 of 7

**GOODSTEIN LAW GROUP** PLLC
501 South G Street
Tacoma, WA 98405
Fax: (253) 779-4411
Tel:(253) 779-4000

Case 18-14536-MLB    Doc 448    Filed 03/18/22    Ent. 03/18/22 19:01:18    Pg. 6 of 7

the time of appointment, as the attorney failed to disclose a sizable pre-petition retainer. "A bankruptcy court must be able to rely on the veracity of the representations made by an attorney <u>in an application for employment</u>." *Id.* The Trustee also claims that the act of recording the 2nd and 3rd Fee Orders makes GLG no longer "disinterested". But that claim ignores that GLG released the recordings and accordingly that this Court ruled that issues based on the filing of the Orders were "moot". DKT # 68 at 3:2-5, (adversarial proceeding). No case cited by Trustee is on point or supports their requested relief.

### C. All of GLG 5th Request Fees Were Beneficial and Necessary.

The State objects to certain fees incurred where GLG moved to stay enforcement of their judgment. The State incorrectly asserted GLG didn't raise certain issues before the trial court. In reply GLG attached the corresponding pleading to so prove. But the commissioner denied the motion for stay. GLG moved to recuse the commissioner on 12/10/21. That fee entry of 3.5 hours also included other services[15]; no more than 1 hour was on the motion to recuse.[16]

### IV. CONCLUSION

For the reasons stated above, GLG's Fee Request should be granted.

Respectfully submitted this 18th day of March 2022.

GOODSTEIN LAW GROUP PLLC
/s/ Carolyn A. Lake
Carolyn A. Lake, WSBA No. 13980
Attorney for Defendant Goodstein Law Group PLLC

---

[15] "Digested more of Vol. II. call from client, and DP." The motion to recuse was withdrawn after the Supremes transferred the case to the C of A, not because it lacked merit but rather was moot.
[16] See Dec of Lake

Goodstein Law Group PLLC's Response to State & Trustee Objection to GLG 5th Fee Request

Page 7 of 7

**GOODSTEIN LAW GROUP** PLLC
501 South G Street
Tacoma, WA 98405
Fax: (253) 779-4411
Tel:(253) 779-4000

Case 18-14536-MLB    Doc 448    Filed 03/18/22    Ent. 03/18/22 19:01:18    Pg. 7 of 7