Honorable Judge Marc Barreca
Location: Zoom
Hearing Date: June 22, 2022
Hearing Time: 10:00 a.m.
Response Due: June 15, 2022

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re:<br><br>TIMOTHY DONALD EYMAN,<br><br>        Debtor. | Bankruptcy Case No. 18-14536-MLB<br><br>DEFENDANT TIMOTHY DONALD EYMAN'S RESPONSE TO THE STATE OF WASHINGTIN & TRUSTEE'S OBJECTION TO EXEMPTIONS |

COMES NOW Debtor Timothy Donald Eyman, by and through his attorneys of record, Vortman & Feinstein, and submits the following Response to the State of Washington and Chapter 7 Trustee's Objection to Exemptions (re: Bank Accounts and Homestead).

### I. INTRODUCTION AND PLAN

Defendant Timothy Donald Eyman requests that the Court enter an Order denying the State of Washington and Chapter 7 Trustee's objection to certain exemptions (bank accounts listed on the Chapter 7 Conversion Schedules) because there is no basis in law or fact under which the Court can grant the relief requested by the Trustee.

Debtor voluntarily commenced this proceeding as a Chapter 11 on November 28, 2018. The Debtor confirmed his Fourth Amended Chapter 11 Plan

Timothy Eyman's Response to Trustee's Exemption Motion — Page 1 of 9

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 18-14536-MLB    Doc 465    Filed 06/09/22    Ent. 06/09/22 15:20:07    Pg. 1 of 10

of Reorganization dated April 4, 2020, *ECF Dkt. 270*, ("Plan") on April 8, 2020. *ECF Dkt. 274*. The Plan addressed what property would and would not be property of a Chapter 7 bankruptcy estate if a post-confirmation conversion was ordered by providing:

> "6.13 If upon further motion or hearing, this case is converted to a case under Chapter 7 of the Code, all property, whether residing in the Estate, or acquired by the Debtor during the pendency of the Chapter 11 case as provided under Section 541 of the Bankruptcy Code shall automatically vest in the Chapter 7 bankruptcy estate."

In the Trustee's *Objection to Exemptions*, the Trustee very cleverly highlighted [as "emphasis added"] the following, which mischaracterizes the above paragraph and *selectively distorts the provision of the plan*:

> "6.13 If upon further motion or hearing, this case is converted to a case under Chapter 7 of the Code, all property, **whether residing in the Estate, or acquired by the Debtor during the pendency of the Chapter 11 case** as provided under Section 541 of the Bankruptcy Code shall **automatically vest in the Chapter 7 bankruptcy estate**."

In fact, this paragraph was incorporated into the Plan [and most Chapter 11 plans as a boilerplate provision] to basically preserve property of the estate "as provided under the Bankruptcy Code Section 541", and that property of the estate would continue to include property "acquired by the Debtor during the pendency of the Chapter 11 case *as provided under Section 541* of the Bankruptcy Code…."

Timothy Eyman's Response to Trustee's Exemption Motion — Page 2 of 9

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 18-14536-MLB    Doc 465    Filed 06/09/22    Ent. 06/09/22 15:20:07    Pg. 2 of 10

The Trustee's selective *emphasis* left out the operative language of this Plan provision that property of the estate would be defined as provided under Section 541. The Court is certainly aware that certain assets which come into the estate *after the filing of the case* may become property of the estate, notwithstanding they were not assets or even in existence at the time of the filing of the case. For instance, life insurance payments or inheritances that arise within 180 after the filing of a Petition become property of the estate after the filing of the case even though they may not have existed at the time of filing. See Section 541(a)(5).

The Trustee's characterization attempts to expand the Code to include the Debtor's post-filing income and earnings, a personal injury settlement, and donations after the case was closed to his Legal Defense Fund. And, of course, what may be included in a Plan for plan payment purposes or for confirmation purposes to reach an agreed or consensual Plan, *all goes out the window* on conversion of the case. The Plan, its provisions, its payment provisions, and its property provisions are no longer operative, and the case reverts back to the statute on conversion.

**II. BANK ACCOUNTS**

Further, the Trustee also ignores completely several factual and legal problems with its arguments:

First, a Debtor in Chapter 11 is essentially a "trustee" for purposes of the Bankruptcy Code and provisions of the Code that address or refer to a Trustee, which then would refer to a *debtor-in-possession*. See Section 1107. As such,

Timothy Eyman's Response to Trustee's Exemption Motion — Page 3 of 9

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 18-14536-MLB    Doc 465    Filed 06/09/22    Ent. 06/09/22 15:20:07    Pg. 3 of 10

when the Supreme Court issued its decision in, 135 S.Ct. 1829, 191 L.Ed.2d 783, 575 US \_\_\_\_ (2015) that funds on hand with the Trustee in a Chapter 13 but not yet disbursed to creditors, are to be returned to the Debtor and are not property of the estate to be turned over to the Chapter 7 trustee on conversion. See Section 1306. As such, since property in the Debtor's accounts at the time of conversion in the instant matter, not having been paid out to the creditors by the Debtor [as "trustee"], are not property of the estate in the converted Chapter 7 case and remain with the Debtor. The Court will note that the statutory language under Section 1306(a)(2) [Chapter 13] cited is word-for-word identical to Section 1115(a)(2) [Chapter 11].

This was also similarly ruled in the 9th Circuit in a Chapter 11 case, finding that funds on hand with the Chapter 11 debtor at the time of conversion to Chapter 7 are not property of the estate to be turned over to the Chapter 7 trustee. In <u>In re Markosian</u>, 506 B.R. 273 (9th Cir.BAP Cal) 2014 WL 956475, the 9th Circuit Bankruptcy Appellate Panel (BAP) held that an individual debtor's post-petition Chapter 11 earnings are not property of the debtor's bankruptcy estate and <u>revert back to the debtor upon a subsequent conversion to Chapter 7.</u>

So, the Court has to look backwards to the bank accounts at the time of the filing of the case and not the bank accounts at the time of conversion, over 2+ years later. Similar to *Markosian*, the Bankruptcy Appellate Panel case in the 9th Circuit denied a Chapter 7 trustee's motion to compel turnover of a tax refund. In the case, see <u>In re Salazar</u>, 465 B.R. 875 (9th Cir BAP 2012). The

Timothy Eyman's Response to Trustee's Exemption Motion — Page 4 of 9

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 18-14536-MLB    Doc 465    Filed 06/09/22    Ent. 06/09/22 15:20:07    Pg. 4 of 10

debtors were entitled to an income tax refund when they filed their Chapter 13 bankruptcy (and admitted it was part of the Chapter 13 estate), received the refund and spent the money on ordinary and necessary expenses during the Chapter 13; and then converted the case to a Chapter 7. The BAP agreed with the lower bankruptcy court that the debtors spent the tax refund money in good faith to pay ordinary and necessary living expenses during the period from the petition date to the conversion date. Consequently, the spent tax refund was not property of the bankruptcy estate on the conversion date. See also In re Grein, 435 B.R. 695, 699 (Bankr.D.Colo.2010); Bogdanov v. Laflamme (In re Laflamme), 397 B.R. 194 (Bankr.D.N.H.2008).

Thus, looking at the Debtor's original schedules, he had on hand at the time of the original filing cash of $361,648.00. [This included several accounts that were for Legal Defense Funds from donations to Mr. Eyman for his legal defense costs and fees.] At the onset of the case, a hearing was held addressing these separate funds, and even though the Court did not rule whether legal defense donations are or are not property of the estate, for Chapter 11 purposes, the Court ordered those separate monthly bank account statements be provided to the US Trustee but not filed in the ECF Monthly Report that was accessible to the general public.

For argument sake, not going through all the UST Monthly operating reports, the Legal Defense separate accounting, and/or the Debtor's general monthly living expenses and payments during the course of the Chapter 11 (per

Timothy Eyman's Response to Trustee's Exemption Motion — Page 5 of 9

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 18-14536-MLB    Doc 465    Filed 06/09/22    Ent. 06/09/22 15:20:07    Pg. 5 of 10

In re Salazar, *supra*.), the Court need only look at the confirmed Plan and the cash payments disbursed to the creditors under the confirmed plan to determine that there are no available funds at the time of conversion that could relate back to the day of original filing to overrule the Trustee's contention that funds on hand earned, donated, or that were paid to the Debtor after the original filing are property of the estate and must be turned over to the Trustee in contravention of Harris v Viegelahn and In re Markosian cited above.

The Plan provided for immediate disbursements from cash on hand of:

a. $270,000.00 to the State of Washington [Section 3.02]

b. $8,137.93 to the State of Washington [Section 4.01]

c. $21,862.07 to the creditor Klinedinst P.C. [Section 4.01]

d. And then monthly payments of $11,400.00 thereafter to unsecured creditors from June 2020 through August 2021, court approved administrative expenses, and UST quarterly fees, for a total of an additional $262,807.32. See Section 4.01(B)(3) and 4.01(c) of the Plan.

e. Thus, the Debtor has paid out to administrative, priority, and unsecured creditors since confirmation of the case in excess of **$562,807.32**. See attached table.

This is about **$200,000** *in excess of cash on hand at the time of filing*. This additional $200,000+ was paid to creditors from post-confirmation earnings, income, a settlement of a personal injury claim, and funds donated to his Legal

Timothy Eyman's Response to Trustee's Exemption Motion — Page 6 of 9

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 18-14536-MLB    Doc 465    Filed 06/09/22    Ent. 06/09/22 15:20:07    Pg. 6 of 10

Defense Fund. Thus, the Court can conclude that the funds on hand at the time of the conversion of the case, could not be from property or funds that were on hand at the time of filing.

### III. LEGAL DEFENSE AND PERSONAL INJURY PAYMENTS

The amount at issue above in the Debtor's bank accounts at the time of conversion consisted of the small remaining personal injury proceeds received earlier in August 2020 (after the case was closed), ongoing post-confirmation legal defense fund gifts (shown on the monthly UST Reports), and post-filing loan repayments. See also the Debtor's filed Declaration dated January 1, 2022, ECF #427.

The funds from a personal injury claim (listed on original Schedule B, Item 33 as unliquidated at the time of the original filing), which was settled and paid out after the Chapter 11 case was closed are exempt under RCW 6.15.010(1)(d)(vi)[1] but used by the Debtor to continue to make the monthly $11,400 plan payments, as stated on the previous page above.

Further, $5,248.95 was itemized in the Declaration as Legal Defense Fund deposits. See analysis regarding Legal Defense Funds under ECF #7 The Debtor contends that the small amount of remaining personal injury proceeds

---

[1] Since the Debtor contends the funds on hand are exempt and/or not property of the estate as stated earlier in this Response, the <u>source</u> of the individual account balances were not itemized in his conversion schedules. However, if necessary, the Debtor will amend Schedule C to claim the funds on hand specifically exempt as personal injury proceeds; and $5,248.95 as legal defense proceeds. See BR 1009: "A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed."

Timothy Eyman's Response to Trustee's Exemption Motion — Page 7 of 9

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 18-14536-MLB    Doc 465    Filed 06/09/22    Ent. 06/09/22 15:20:07    Pg. 7 of 10

received after the case was closed but on hand at the time of conversion are exempt, and that legal defense donations are not property of the estate. So, notwithstanding the above discussion that the funds on hand revert to the debtor upon conversion, per Harris v Viegelahn and In re Markosian, the Debtor further contends that the $5,248.95 Legal Defense funds on hand are not property of the estate and therefore need not be exempted; and the funds from the insurance proceeds are separately exempt up to $20,000 and are not subject to the $3,500 limit for wildcard/cash on hand under RCW 6.15.010(1)(d)(ii). See RCW 6.15.010(1)(d)((vii).

**IV. HOMESTEAD**

The Trustee then raises the objection to the Debtor's claim of homestead on the property. Not that the Debtor is not entitled to a homestead, but rather the amount of the homestead.

The Debtor agrees, under the same analysis above for the bank accounts, that the homestead exemption is also fixed as of the date of the filing of the case, similar to the bank accounts. As such, the Debtor claimed the homestead, which at the time of filing was $125,000.00. The Schedule C Exemptions, however, noted that the non-debtor spouse was residing in the home, claimed the home as her separate property [which is subject to a separate adversary proceedings in this case], and that Schedule C noted that the non-filing spouse may have claims or homestead claims against the property, and since she is not in bankruptcy, the amount of her homestead claims may be subject to the amendments to the Homestead Act in 2021, that raised the homestead from $125,000 to $549,400.

Timothy Eyman's Response to Trustee's Exemption Motion — Page 8 of 9

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 18-14536-MLB    Doc 465    Filed 06/09/22    Ent. 06/09/22 15:20:07    Pg. 8 of 10

But the Debtor does not claim $549,000 and agrees with the Trustee that the homestead allowance as to him is limited to the statutory limit on filing in 2018 of $125,000.00. Thus from any sale of the home by the Trustee, the Debtor only claims and is entitled to receive in closing from the sale proceeds the sum of $125,000.00.

V. **CONCLUSION**

For the reasons stated above, the State and Trustee's objections must be denied.

Respectfully submitted this 31th day of May 2022.

/s/ Larry B. Feinstein
Larry B. Feinstein, WSBA #6074
Attorney for Debtor Timothy Donald Eyman

Timothy Eyman's Response to Trustee's Exemption Motion — Page 9 of 9

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 18-14536-MLB    Doc 465    Filed 06/09/22    Ent. 06/09/22 15:20:07    Pg. 9 of 10

TOTAL PAID FROM PLAN

| Date | Description | Amount | |
|---|---|---|---|
| 4/20/20 | CHECK | ($1,625.00) | US TRUSTEE |
| 4/24/20 | WITHDRAWAL | ($102,616.75) | State of Washington |
| 4/27/20 | CHECK | ($21,862.07) | KLINEDINST PC (LAW FIRM) |
| 4/27/20 | CHECK | ($46,001.51) | State of Washington |
| 4/28/20 | CASHIERS CHE | ($74,500.53) | State of Washington |
| 4/28/20 | CASHIERS CHE | ($55,015.24) | State of Washington |
| 5/5/20 | WITHDRAWAL | ($11,400.00) | $10K to the State $1456.02 to Klinedinst Law |
| 5/12/20 | WITHDRAWAL | ($1.00) | cashiers check fee |
| 6/1/20 | CHECK # 1415 | ($1,625.00) | US Trustee (quarterly filing fee) |
| 6/5/20 | TRF TO DDA 00 | ($11,456.02) | $10K to the State, $1456.02 to Klinedinst Law |
| 7/7/20 | WITHDRAWAL | ($11,456.02) | $10K to the State, $1456.02 to Klinedinst Law |
| 7/9/20 | QUARTERLY FE | ($3,900.00) | US Trustee (quarterly filing fee) |
| 7/13/20 | CHECK # 1893 | ($5,000.00) | Goodstein Law Group (legal fees) |
| 8/7/20 | WITHDRAWAL | ($11,456.02) | $10K to the State, $1456.02 to Klinedinst Law |
| 9/10/20 | Agent Assisted | ($11,300.00) | $10K to the State, $1456.02 to Klinedinst Law |
| 9/10/20 | CHECK | ($11,300.00) | $10K to State; and $1456.02 to Klinedinst Law |
| 10/1/20 | Check | ($2,483.26) | Hawthorne & Co (accounting services) |
| 10/9/20 | BKOFAMERICA | ($11,456.02) | $10K to the State, $1456.02 to Klinedinst Law |
| 10/9/20 | CHECK | ($11,456.02) | $10K to State; and $1456.02 to Klinedinst Law |
| 11/12/20 | WA TLR transf | ($11,456.02) | $10K to the State, $1456.02 to Klinedinst Law |
| 11/30/20 | Check | ($2,200.00) | Hawthorne & Co (accounting services) |
| 12/7/20 | WA TLR transf | ($11,456.02) | $10K to the State, $1456.02 to Klinedinst Law |
| 1/4/21 | WA TLR transf | ($11,456.02) | $10K to the State; $1156.02 to Klinedinst Law |
| 1/22/21 | Check | ($650.00) | US Trustee (quarterly filing fee) |
| 2/4/21 | WA TLR transf | ($11,456.02) | $10K to the State; $1156.02 to Klinedinst Law |
| 3/12/21 | WA TLR transf | ($11,456.02) | $10K to the State; $1156.02 to Klinedinst Law |
| 4/5/21 | WA TLR transf | ($11,456.02) | $10K to the State; $1156.02 to Klinedinst Law |
| 4/21/21 | Check | ($975.00) | US Trustee (quarterly filing fee) |
| 4/27/21 | WA TLR transf | ($11,456.02) | $10K to the State; $1156.02 to Klinedinst Law |
| 6/3/21 | WA TLR transf | ($11,456.02) | $10K to the State; $1156.02 to Klinedinst Law |
| 7/6/21 | Online Bankin | ($11,456.02) | $10K to the State; $1156.02 to Klinedinst Law |
| 7/9/21 | Check | ($25,000.00) | Goodstein Law Firm |
| 7/9/21 | CASHIERS CHE | ($10,000.00) | Goodstein Law Firm |
| 7/20/21 | Check | ($451.49) | US Trustee (quarterly filing fee) |
| 8/17/21 | Online Bankin | ($11,456.02) | $10K to the State; $1156.02 to Klinedinst Law |
| 10/25/21 | CASHIERS CHE | ($2,793.75) | THURSTON COUNTY CLERK |
| 12/8/21 | QUARTERLY FE | ($266.42) | US Trustee (quarterly filing fee) |
| | | ($562,807.32) | |