EX. 2

# RESIDENTIAL PURCHASE AND SALE AGREEMENT

This Residential Purchase and Sale Agreement ("RPSA Agreement" or "Agreement") is made as of June 20 2022, by and between Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB ("Seller"), and Karen Williams, fka Karen Eyman, as her separate estate ("Purchaser").

## RECITALS

A. Seller has an interest in that certain real property and the improvements located in Snohomish County, Washington, commonly known as 11913 59th Avenue West, Mukilteo, Washington, and legally described on **Exhibit 1**, attached hereto and incorporated herein by this reference (the "Property").

B. Seller desires to transfer, and Purchaser desires to obtain, all of Seller's interest in and to the Property, in accordance with the terms and conditions set forth herein.

C. A settlement agreement to resolve some issues related to the bankruptcy proceeding referenced above was entered into by and between Seller, Purchaser, Timothy Donald Eyman, the State of Washington, and Goodstein Law Group in June 2022. ("Settlement Agreement"). The Settlement Agreement, which is subject to approval by the Bankruptcy Court in the above-referenced case, contains provisions regarding the sale and purchase addressed in this RPSA Agreement.

## AGREEMENT

**NOW, THEREFORE,** the Parties agree as follows:

1. **Purchase and Sale.** Seller shall sell the Property to Purchaser, and Purchaser shall buy the Property from Seller, upon the terms set forth herein.

2. **Purchase Price/Payment.** The total purchase price ("Purchase Price") shall be in the sum of Nine Hundred Six Thousand Four Hundred Eighty-Four and No/100 Dollars ($906,484.00). The Purchase Price shall be payable by Purchaser to Seller at Closing.

3. **Title and Title Insurance.**

3.1 **Title.** At Closing, Seller shall convey the Property to Purchaser by Quit Claim Deed ("Deed"), a form of which is attached as **Exhibit 2**. The sale of the Property is "as is" without warranties or contingencies of any kind except for as provided herein.

3.2 **Closing Agent.** The closing agent for this transaction shall be Wanda Nuxoll of WREN Law and Escrow Services, or other agent agreed to by Seller and Purchaser (the "Closing Agent"). Purchaser may obtain, at her option and at her own cost, a standard form owner's policy of title insurance ("Owner's Policy"). In no event shall a delay in Purchaser obtaining the Owner's Policy, at her election, delay the timeline for this transaction to close, as provided at ¶10.



4. **Disclosure.** Seller and Purchaser agree this transaction is exempt from disclosure ordinarily required by RCW 64.06.020 pursuant to RCW 64.06.010(6) because the sale is by a trustee in bankruptcy.

5. **Representations and Warranties of Seller.** Seller hereby makes the following representations and warranties to Purchaser which shall also be true as of Closing and which shall survive Closing:

5.1 **Authority.** Seller has the power and authority to enter into this Agreement and to perform all of Seller's obligations hereunder; and

**Seller makes no representations or warranties regarding the Property other than those specifically set forth herein, including, without limitation, no representations or warranties regarding the general condition of the Property (including the improvements located thereon), boundary lines, possible encroachments, or size of the Property, compliance with environmental laws, zoning or land-use matters or the existence of any wetlands, surface water or flooding on the Property. Except as specifically represented and warranted above, the Property is sold "As Is". Purchaser is relying upon her own pre-closing inspections and investigations of the Property.**

6. **Representations and Warranties of Purchaser.** Purchaser hereby makes the following representations and warranties to Seller which shall also be true as of Closing and which shall survive Closing:

6.1 **Authority.** Purchaser has the power and authority to enter into this Agreement and to perform all of Purchaser's obligations hereunder;

6.2 **Financial Status.** Purchaser warrants and represents that Purchaser is financially capable to faithfully perform the terms of this Agreement; and

6.3 **No Broker.** Purchaser has not used any broker in connection with the purchase of this Property and no commission shall be due as a result of this transaction.

7. **Contingencies.** The Parties' obligation to close shall be conditioned upon the satisfaction of the following as well as any other requirements in the Settlement Agreement (e.g. source of purchase price):

7.1 **Seller's Representations and Warranties.** Seller's representations and warranties contained herein shall be true and correct when made and as of Closing.

7.2 **Purchaser's Representations and Warranties.** Purchaser's representations and warranties contained herein shall be true and correct when made and as of Closing.

7.3 **Bankruptcy Court Approval.** This sale is subject to and contingent upon approval of the Settlement Agreement (as defined in Recitals and ¶10) by the Bankruptcy Court (as defined in ¶15).

WY

8. **Property Condition**. Seller and Purchaser acknowledge and agree that Seller is not, and has never been, in possession of the Property and has not had an adequate opportunity to perform any investigations and/or due diligence with respect to the condition of the Property. Purchaser, who has been in possession of and who has been living on the Property, has conducted her own investigation and due diligence and is satisfied with the condition of the Property. Thus, Purchaser expressly waives her right of the inspection of the Property, as well as any other disclosures required by any other statute, rule, regulation, or ordinance.

9. **Included Items**. Linoleum, window screens, screen doors, plumbing and lighting fixtures (except floor, standing and swag lamps), appliances (including the washer, dryer, refrigerator and stove), shades, venetian blinds, curtain rods, drapes, all attached bathroom fixtures, attached television antennas, attached carpeting, trees, plants and shrubbery in the yard, water heating apparatus and fixtures, awnings, ventilating, cooling and heating systems, attached irrigation equipment that are now on the Property, and shares in the light and water companies and associations, if any, shall be included in the sale.

10. **Closing**. The consummation of the transactions contemplated by this Agreement ("Closing") shall take place on or before July 29, 2022, or upon the Effective Date of the Settlement Agreement as defined at Paragraph 8 therein, whichever is later (the "Closing Date"). The deadline for Closing may also be extended in writing by mutual agreement between the Trustee and Karen Eyman, PROVIDED that the extension of the Closing is not more than thirty (30) days. Per the Settlement Agreement, any extension of the Closing for more than thirty (30) days shall only be by mutual agreement in writing between all of the parties to the Settlement Agreement.

10.1. **Proration.** Taxes, utilities, and other similar charges for the then current year shall be solely the responsibility of the Purchaser.

10.2 **Closing Costs.** Purchaser and Seller shall each pay one half of the fees and costs of the Closing Agent. Purchaser agrees to pay the cost of the Owner's Policy of title insurance. Seller shall pay the Real Estate Excise Tax and all capital gains taxes and/or income taxes incurred as a result of the transfer. Seller's approved administrative claims shall be a deduction to the amount of any capital gains and income taxes owed as provided by applicable law. Purchaser and Seller will deposit timely in escrow with the Closing Agent all instruments and monies necessary to complete the purchase and sale.

10.3 **Possession.** Purchaser shall be entitled to possession of the Property at Closing.

10.4 **Deliveries by Seller.** At Closing, Seller shall deliver to Purchaser the Quit Claim Deed.

10.5 **Deliveries by Purchaser.** At or prior to Closing, Purchaser shall deliver the Purchase Price to Seller.

11. **Default/Remedies.** In the event Purchaser or Seller fails to complete the purchase of the Property, then the provisions of the Settlement Agreement, including ¶ 9 regarding "Default" will apply.

12. **Binding Effect.** This Agreement shall be binding upon and shall inure to the benefit of the respective successors, heirs, and assigns of each of the Parties.

13. **Time of Essence.** Time is of the essence of this Agreement. Any party's failure to strictly perform as agreed will constitute a material breach under this Agreement, entitling the nonbreaching party, in its sole discretion, to seek their remedies afforded to them pursuant to terms and conditions of this Agreement and the Settlement Agreement.

14. **Attorney's Fees.** If any action or proceeding is commenced by either party to enforce their rights under this Agreement or to collect damages as a result of the breach of any of the provisions of this Agreement, the prevailing party in such action or proceeding, including any bankruptcy, insolvency or appellate proceedings, as determined by the Court will be entitled to recover all reasonable costs and expenses, including, without limitation, reasonable attorneys' fees and costs, in addition to any other relief awarded by the court, and attorneys' fees and costs in connection with any appeal or with regard to any bankruptcy action.

15. **Venue/Governing Law.** This Agreement shall be governed by, construed and enforced in accordance with the United States Bankruptcy Code, Title 11 of the United States Code. To the extent state law applies, this Agreement shall be governed by, construed and enforced in accordance with the internal laws of the State of Washington, without giving effect to principles and provisions thereof relating to conflict or choice of laws irrespective of the fact that any one of the parties is now or may become a resident of a different state. Any action to enforce this Agreement shall be brought in the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court") and the Parties consent to and agree to submit to the jurisdiction of the Bankruptcy Court. Both parties agree that the U.S. Bankruptcy Court for the Western District of Washington has both *in personam* and subject matter jurisdiction to enforce this Agreement.

16. **Counterparts and Facsimiles.** This Agreement may be executed in counterparts and shall become effective when identical counterparts have been signed by all parties. For purposes of this Agreement, scanned or facsimile signatures shall be deemed to be original signatures.

17. **Continuing Duty to Cooperate.** Each party agrees to perform any further acts and to execute and deliver such further documents which may be reasonably necessary to carry out the intent and terms of this Agreement.

18. **Severability.** If any provision of this Agreement or application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement (including the application of such provision to persons or circumstances other than those to which it is held invalid or unenforceable) shall not be affected thereby, and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

19. **Waiver.** No waiver by Purchaser or Seller of any of the terms or conditions of this Agreement or any of their respective rights under this Agreement shall be effective unless such waiver is in writing and signed by the party charged with the waiver.

20. **Entire Agreement.** This Agreement sets forth the entire agreement of the Parties regarding its subject matter. This Agreement supersedes all previous offers, counteroffers, oral agreements, and understandings all of which have been integrated into this Agreement. This Agreement may not be modified, amended, altered, or superseded except by an agreement in writing signed by the Parties.

21. **Expenses.** Each party shall pay all costs and expenses, including attorney's fees, incurred or to be incurred by it in negotiating, preparing and implementing this Agreement, except as expressly set forth otherwise in this Agreement or the Settlement Agreement.

22. **Acknowledgements.** The Parties hereby acknowledge that: (a) they are represented by legal counsel of their choice (or have knowingly and intelligently waived their right to have legal counsel of their choice review and represent them with respect to the negotiation and preparation of the Agreement); (b) they are fully aware of the terms contained in the Agreement; (c) they are entering into the Agreement (and any documents executed in connection with the Agreement) voluntarily and without coercion or duress of any kind; and (d) no partnership or joint venture is created hereby or otherwise exists by virtue of the transactions entered into by the Parties. The Parties have generated this Agreement through equal negotiations, and it should not be interpreted or construed more favorably or unfavorably as to any Party. Further, the Parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature.

24. **Incorporation of Recitals.** The Parties agree that the recitals contained herein are material to the terms of this Agreement and are hereby incorporated and made a part of this Agreement.

25. **No Third-Party Beneficiaries.** Nothing in the Agreement, express or implied, shall be construed to confer any right, remedy, claim, obligation, or liability upon any person other than the Parties.

26. **Tax Consequences.** The Parties acknowledge and agree that there may be tax consequences stemming from this Agreement. Each Party is solely responsible for any and all federal, state, city, or local taxes which might be due and owing as a result of any term contained in this Agreement. The Parties acknowledge that no tax advice has been offered or given by either party, their attorneys, agents, or any other representatives, in the course of these negotiations, and each party is relying upon the advice of his or her own tax consultant with regard to any tax consequences that may arise as a result of the execution of this Agreement.

[SIGNATURES ON FOLLOWING PAGES]



We hereby accept the terms and conditions of this Agreement:

**SELLER:**

VIRGINIA BURDETTE, SOLELY IN HER CAPACITY AS THE DULY APPOINTED CHAPTER 7 TRUSTEE OF *IN RE TIMOTHY DONALD EYMAN*, CAUSE NO. 18-14536-MLB

______________________________ Date: 6/20/22
Virginia Burdette, Chapter 7 Trustee

**BUYER:**

KAREN WILLIAMS, FKA KAREN EYMAN

______________________________ Date: ______________
Karen Williams, as her separate estate

We hereby accept the terms and conditions of this Agreement:

**SELLER:**

VIRGINIA BURDETTE, SOLELY IN HER CAPACITY
AS THE DULY APPOINTED CHAPTER 7 TRUSTEE
OF *IN RE TIMOTHY DONALD EYMAN*,
CAUSE NO. 18-14536-MLB

______________________________ Date: ______________

Virginia Burdette, Chapter 7 Trustee

**BUYER:**

KAREN WILLIAMS, FKA KAREN EYMAN

______________________________ Date: 6/21/2022

Karen Williams, as her separate estate

**EXHIBIT 1**

**PROPERTY DESCRIPTION**

LOT 5, ONE CLUB HOUSE LANE, DIV. 6, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 57 OF PLATS, PAGES 258 THROUGH 270 INCLUSIVE, RECORDS OF SNOHOMISH COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF SNOHOMISH, STATE OF WASHINGTON.

Tax Parcel Number: 00834700000500

**EXHIBIT 2**

**Return Address:**
Karen Williams
11913 59th Avenue West
Mukilteo Washington 98275

---

## QUIT CLAIM DEED

| | |
|---|---|
| **Grantor:** | Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB |
| **Grantee:** | Karen Williams, as her separate estate |
| **Abbreviated Legal:** | ONE CLUB HOUSE LANE DIV 6 BLK 000 D-00 LOT 5 |
| **Tax Parcel No.:** | 00834700000500 |

### QUIT CLAIM DEED

The Grantor, Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB, and pursuant to the Settlement Agreement executed in connection with that certain bankruptcy proceeding in the United States Bankruptcy Court in the Western District of Washington, *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB, conveys and quit claims unto Karen Williams, as her separate estate, as Grantee, all of the Grantor's right, title, and interest in that certain real property situated in the County of Snohomish, State of Washington (the "Real Property"), and all after acquired title of the Grantor therein, which Real Property is legally described on **Exhibit to Quit Claim Deed**, attached hereto and incorporated herein by this reference.

DATED June ___, 2022.

GRANTOR:

____________________________________
Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB

STATE OF WASHINGTON )
) ss.
COUNTY OF __________ )

I certify that I know or have satisfactory evidence that ______________, appeared before me on behalf of Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB, and said person acknowledged that he/she signed this instrument and acknowledged it to be his/her free and voluntary act for the uses and purposes mentioned in the instrument.

DATED this ___ day of June 2022.

______________________________________
Name: ________________________________
Notary Public in and for the State of Washington
residing at: ____________________________
My Appointment Expires: ________________

**EXHIBIT to Quit Claim Deed**

LOT 5, ONE CLUB HOUSE LANE, DIV. 6, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 57 OF PLATS, PAGES 258 THROUGH 270 INCLUSIVE, RECORDS OF SNOHOMISH COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF SNOHOMISH, STATE OF WASHINGTON.

Tax Parcel Number: 00834700000500