IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | Case No.: 18-14536-MLB |
| TIMOTHY DONALD EYMAN,<br><br>Debtor. | ORDER APPROVING SETTLEMENT OF ADVERSARY PROCEEDING, ALLOWING ABANDONMENT OF CERTAIN PROPERTY, AND AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND OTHER INTERESTS |

THIS MATTER came before the Honorable Marc Barreca upon the Trustee's Motion for Order Approving Settlement of Adversary Proceeding, Allowing Abandonment of Certain Property, and Authorizing Sale of Real Property Free and Clear of Liens and Other Interests ("Motion"), Dkt. 474. The Court finds that Notice of the Trustee's Motion was properly and timely given to the parties entitled to notice, as evidenced by the Declaration of Mailing on file with the Court. The Court has considered the pleadings filed in support of the Motion, responses filed thereto (if any), and the records and files in the above-referenced case, and has determined that good cause exists for the requested relief to be granted. THEREFORE, it is hereby:

ORDER APPROVING SETTLEMENT, ALLOWING
ABANDONMENT OF CERTAIN PROPERTY, AND
AUTHORIZING SALE OF REAL ESTATE  - 1

*SCHWEET LINDE & COULSON, PLLC*
575 S. MICHIGAN ST.
SEATTLE, WA 98108
P (206) 275-1010 F (206) 381-0101

1  ORDERED, ADJUDGED and DECREED that the Settlement Agreement, attached hereto

2  as Exhibit 1 is approved; and it is further

3  ORDERED, ADJUDGED and DECREED that the Trustee is authorized to abandon certain

4  personal property pursuant to §554, which property is listed in Exhibit A to the Settlement

5  Agreement attached hereto as Exhibit 1; and it is further

6  ORDERED, ADJUDGED and DECREED that, per the terms of the Settlement Agreement

7  attached hereto as Exhibit 1 and Real Estate Purchase and Sale Agreement attached as Exhibit 2,

8  the Trustee is authorized to the sell to Karen Williams via quit claim deed the real property located

9  at 11913 59th Ave. W., Mukilteo, WA 98275 and legally described as follows (the "Property"):

> LOT 5, ONE CLUB HOUSE LANE, DIV. 6, ACCORDING TO THE PLAT THEREOF,
> RECORDED IN VOLUME 57 OF PLATS, PAGES 258 THROUGH 270 INCLUSIVE,
> RECORDS OF SNOHOMISH COUNTY, WASHINGTON. SITUATE IN THE
> COUNTY OF SNOHOMISH, STATE OF WASHINGTON.

> Tax Parcel Number: 00834700000500.

14  and it is further

15  ORDERED, ADJUDGED and DECREED that for purposes of 11 U.S.C. §363(m), the

16  Settlement Agreement and Real Estate Purchase and Sale Agreement were executed by the

17  parties in good faith after mediation; and it is further

18  ORDERED, ADJUDGED and DECREED that per the terms of the litigation guarantee

19  submitted by the Trustee in support of the Motion, the sale of the Property by the Trustee shall

20  be subject to applicable unpaid general and special taxes owing against the Property, as the

21  Trustee and Karen Williams have agreed that said taxes, utilities, and similar charges shall be the

22  responsibility of Karen Williams; and it is further

23  

24  ORDERED, ADJUDGED and DECREED that the Property shall be sold free and clear of

25  the lien of the Deed of Trust in favor of U.S. Bank National Association, successor to U.S. Bank

26  National Association N.D. ("U.S. Bank"). recorded under Snohomish County Auditor's File

ORDER APPROVING SETTLEMENT, ALLOWING
ABANDONMENT OF CERTAIN PROPERTY, AND
AUTHORIZING SALE OF REAL ESTATE   - 2

*SCHWEET LINDE & COULSON, PLLC*
575 S. MICHIGAN ST.
SEATTLE, WA 98108
P (206) 275-1010 F (206) 381-0101

Number 200807080035 (exception 2). Further, in the Debtor's bankruptcy schedules, the Debtor listed no secured debt owed on the Property in favor of U.S. Bank. Upon filing updated schedules on January 1, 2022, the Debtor again listed no secured debt in favor of U.S. Bank. Having received notice of this motion to sell free and clear, U.S. Bank has failed to respond to this motion with satisfactory evidence that it is still owed a secured obligation. Accordingly, the lien of U.S. Bank against the Property will not attach to any of the sale proceeds. And it is further

ORDERED, ADJUDGED and DECREED that the Property shall be sold free and clear of: (1) the lien of the *lis pendens* recorded under Snohomish County Auditor's File Number 202004090645 (exception 3); and (2) the terms and conditions of that certain Divorce Decree between the Debtor and Karen Williams entered by the Snohomish County Superior Court in Case Number 22-3-00392-31 (exception 4). And it is further

ORDERED, ADJUDGED and DECREED the Property shall be sold subject to all of the remaining exceptions included in the litigation guarantee submitted in support of the Motion. And it is further

ORDERED, ADJUDGED and DECREED that the Trustee is authorized to execute any documents necessary to effectuate the the terms of this order.

///END OF ORDER///

Presented By:

/s/ Thomas S. Linde
Thomas S. Linde, WSBA#14426
Michael M. Sperry, WSBA#43760
Latife H. Neu, WSBA#33144
Attorneys for Virginia Burdette, Chapter 7 Trustee

ORDER APPROVING SETTLEMENT, ALLOWING
ABANDOMENT OF CERTAIN PROPERTY, AND
AUTHORIZING SALE OF REAL ESTATE  - 3

**SCHWEET LINDE & COULSON, PLLC**
575 S. MICHIGAN ST.
SEATTLE, WA 98108
P (206) 275-1010 F (206) 381-0101

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is by and between: (1) the State of Washington ("the State"), (2) Timothy Donald Eyman ("the Debtor" or "Timothy Eyman"), (3) Karen Eyman nka Karen Willliams ("Karen Eyman"), (4) Goodstein Law Group PLLC ("GLG"), and (5) Virginia Burdette, Chapter 7 Trustee ("the Trustee") representing the interests of the bankruptcy estate ("the Estate"); (each a "Party" and collectively the "Parties"). Parties (2) and (3) are collectively referred to herein as "the Eymans." The Parties agree and stipulate as follows:

## I.  RECITALS

A. On November 28, 2018, the Debtor filed an individual Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court") under Cause Number 18-14536-MLB (the "Bankruptcy") which created a bankruptcy estate ("the Estate").  Karen Eyman did not join in the filing of the Chapter 11 petition of the Debtor.

B. Real property commonly known as 11913 59th Avenue West, Mukilteo, Washington, ("the Mukilteo house") was listed as an asset of the Estate in the Debtor's schedules.

C. On April 16, 2021, the State of Washington obtained a State Court Judgment against the Debtor in the amount of $5,503,169.83 (the "Judgment").

D. On April 8, 2020, the Debtor's Chapter 11 Plan (the "Plan") was confirmed by the Bankruptcy Court.  In the Plan, the final Judgment of the State is declared to be non-dischargeable.

E. On June 28, 2021, the State filed an adversary proceeding in the Bankruptcy Court under Cause Number 21-01041 (the "Adversary Proceeding"). In the Adversary Proceeding, the State sought entry of a declaratory judgment establishing that the Mukilteo house is the community property of the Debtor, and thus the Mukilteo house is property of the Estate.

F. On August 4, 2021, Karen Eyman was granted leave to intervene in the Adversary Proceeding and intervened as a defendant asserting a counter claim against the State, alleging that the Mukilteo house was not community property, but was instead her separate property and thus not included as property of the Estate.

G. After the Debtor defaulted, the Debtor's bankruptcy was converted from Chapter 11 to Chapter 7 on December 17, 2021, and Virginia Burdette (the "Trustee") was appointed to administer the Estate as the Chapter 7 trustee. The Trustee was then granted leave by the Bankruptcy Court to also intervene as a party in the Adversary Proceeding.

H. On February 15, 2022, the Bankruptcy Court ruled on a motion for summary judgment

in the Adversary Proceeding that at least eighty percent of the Mukilteo house was community property of the Debtor and therefore property of the Estate. The Bankruptcy Court denied summary judgment without prejudice as to the separate or community character of the remaining twenty percent of the Mukilteo house.

I.  After the summary judgment ruling, the Parties agreed to mediate certain of the disputed issues between the Parties.

J.  To avoid the additional time, costs, and expenses of litigation, the Parties wish to settle all of the remaining claims related to the Adversary Proceeding and certain other issues in the Bankruptcy as addressed below.

## II. AGREEMENT

**NOW, THEREFORE, THE PARTIES AGREE AS FOLLOWS:**

In consideration of the mutual benefits accruing to each, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to settle the claims concerning the Eymans' Mukilteo house and the issues addressed below as follows (the "Settlement"):

1.  **Incorporation of Recitals.** The Parties affirm and acknowledge that all facts set forth in the Recitals of this Agreement are true and correct. The Parties further agree that the Recitals contained herein are material to the terms of this Agreement and are hereby incorporated and made a part of this Agreement.

2.  **Purchase of the Mukilteo House by Karen Eyman.** The Parties have agreed that Karen Eyman as her separate estate shall purchase the Mukilteo house from the bankruptcy estate for the sum of **$906,484.00** ("the Sale"). The Sale shall be free and clear of any lien, claim, or interest pursuant to 11 U.S.C. §363(f). This includes, specifically, any claim of Tim Eyman. The Sale shall also be per the terms of a purchase and sale agreement attached as Exhibit B, which provides that the Sale will be: (i) "as is" without warranties of any kind; (ii) without contingencies of any kind; and (iii) via quit claim deed. The closing of the Sale contemplated by this Agreement ("Closing") shall take place on or before June 30, 2022, or upon the Effective Date of the Settlement Agreement as defined at Paragraph 8 herein, whichever is later (the "Closing Date"), EXCEPT that the Closing may be extended in writing by mutual agreement between the Trustee and Karen Eyman, PROVIDED that the extension of the Closing is not more than thirty (30) days. Any extension of the Closing for more than thirty (30) days shall only be by mutual agreement in writing between all of the Parties.

3.  **Disposition of the Proceeds of the Sale.** In consideration of the Settlement, the Debtor and Karen Eyman waive any right to receive from the Estate the amount of the exemptions claimed by the Debtor in the Mukilteo house. This includes, but is not limited to, any homestead exemption amount. It is agreed that the claimed exemption amounts

have already been credited in connection with determination of the purchase price for the Sale as set forth above.

4. **Additional Stipulations.** The Parties further agree and stipulate that: (a) the entirety of the Mukilteo house is community property and property of the Estate (b) the Judgment of the State shall be deemed a community claim. The Parties further agree that with this Agreement the pending Adversary Proceeding filed by the State is no longer needed and should be dismissed. The Parties further agree that the Sale proceeds shall be administered pursuant to the priorities set forth in 11 USC §§726 and 507, subject to the waivers of interest contained in this Agreement and the claims allowance process.

5. **Source of the Purchase Price.** Karen Eyman warrants that the funds for her purchase of the Mukilteo house are not and shall not be funded by assets of the Estate, defined as the separate property of the Debtor in existence as of the date of conversion to Chapter 7, as well as the community property of the Eyman marital community in existence as of the date of conversion to Chapter 7. Karen Eyman hereby discloses that the funds necessary to fund this agreement are coming from her brother, Jari K. Williams. Ms. Eyman agrees to provide within 14 days of signing this Agreement a declaration by her as well as a declaration by her brother, Mr. Williams, describing the source(s) of the funds with attached documentation and establishing that such funds are not assets of the Estate. Documentation shall include an attachment marked "confidential financial information" that identifies Mr. Williams' bank account, with sufficient funds, as the source of funds to be used at closing. Any attachment marked "confidential financial information" shall not be filed in Court nor shall the information be otherwise disseminated unless reasonably required in the event of a good faith dispute that would require filing the same with the Court. If filed in Court, account information and other similar confidential information will be redacted as required by court rules. Parties also understand and acknowledge that the State may have to disclose the declarations and any attachments in response to a request for information made pursuant to the Public Records Act (RCW 42.56) and may only apply redactions that are legally authorized at the time of the request is made. (E.g. Currently, RCW 42.56.230 authorizes redaction of financial information as defined by RCW 9.35.005.) A failure to satisfactorily establish to the Court that the funds for said purchase are not assets of the Estate will constitute a default by Ms. Eyman as addressed in paragraph 9 below.

6. **Abandonment of Certain Property of the Estate**. As part of this Agreement, the Trustee will move to abandon her interest in (a) two vehicles itemized on the attached Exhibit A; (b) household possessions and furnishings itemized on the attached Exhibit A; and (c) certain jewelry items itemized on the attached Exhibit A. The items listed in Exhibit A shall be consistent with the Debtor's previously filed schedules in the Bankruptcy proceedings.

7. **Bankruptcy Court Approval.** This Settlement is binding upon the Parties and is subject to and contingent upon Bankruptcy Court approval under Rule 9019 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §363 of: (a) the Settlement; (b) the Abandonment of Certain Property of the Estate (the "Abandonment"), and (c) the Sale of

the Mukilteo house. Within fourteen (14) days of all Parties signing this Agreement, the Trustee shall file, serve, and set for hearing a motion to approve the Settlement, the Abandonment, and the Sale under Rule 9019 of the Federal Rules of Bankruptcy Procedure (a "9019 Motion") and thereby seek entry of a court order approving the Settlement, the Abandonment, and the Sale as generally described by the Trustee in the 9019 Motion and any declaration filed in support of such 9019 Motion. Each Party agrees not to oppose the 9019 Motion provided it is consistent with the terms of this Agreement.

**8. Settlement Effective Date.** The effective date of this Agreement is upon entry of a final and unappealable order of the Court approving the Settlement, the Abandonment, and the Sale (the "Settlement Effective Date"). Within 10 business days of the Settlement Effective Date, the Parties shall submit to the Bankruptcy Court a stipulation and order dismissing all claims relating to the Adversary Proceeding with prejudice, unless the Closing of the Mukilteo house pursuant to paragraph 2 above has been extended, in which case the dismissal of the Adversary Proceeding shall be submitted within 10 business days of the Closing Date.

**9. Default.** Time is of the essence, and any failure of Karen Eyman to pay or otherwise strictly perform as agreed will constitute a default under this Agreement, entitling the Trustee to terminate the Sale and immediately proceed with any and all steps necessary to effectuate turnover and liquidation of the assets of the Estate, including, but not limited to the entirety of the Mukilteo house and the property referred to in paragraph 6 above. In addition, a Party will be in default under this Agreement for failure to execute any documents reasonably necessary to effectuate the terms of this Agreement. Should Karen Eyman default under this Agreement, all Parties agree that all other provisions and stipulations in this Agreement, except for paragraph 6 (regarding the Abandonment) shall remain valid, including, but not limited to the Mukilteo house being community property in its entirety. Additionally, all parties agree that should Karen Eyman default, the applicable homestead exemption amount is $125,000 and all Parties hereby waive any and all claims to an alternative homestead amount. Should any Party default, Karen Eyman shall have the right to compel compliance with the terms of this Agreement by seeking a specific performance order from the Bankruptcy Court pursuant to a motion pursuant to BR 9013 and the parties agree that both *in personam* and subject matter jurisdiction is proper in that Court. In the event of such necessity, the prevailing party, as determined by the Court will be entitled to costs and reasonable attorney's fees.

10. **Authority.** Each person signing this Agreement warrants that he or she has authority to bind the Party on whose behalf he or she is signing.

11. **Independent Counsel.** The Parties acknowledge and agree that they have each been represented in the negotiations and preparation of this Agreement by independent counsel of their choice, and that they have read this Agreement, have had its contents fully explained to them by such counsel, and are aware of the contents hereof and of its legal effect.

12. **Entire Agreement.** This Agreement contains the entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and there are

no representations, inducements, promises or agreements, oral or otherwise, not embodied herein. Any and all prior discussions, negotiations, commitments and understandings relating thereto are merged herein. There are no conditions precedent to the effectiveness of this Agreement other than as stated herein, and there are no related collateral agreements existing between the Parties that are not referenced herein.

13. **Law.** This Agreement shall be governed by, construed and enforced in accordance with the United States Bankruptcy Code, Title 11 of the United States Code. To the extent state law applies, this Agreement shall be governed by, construed and enforced in accordance with the internal laws of the state of Washington, without giving effect to principles and provisions thereof relating to conflict or choice of laws irrespective of the fact that any one of the Parties is now or may become a resident of a different state. Any action to enforce this Agreement shall be brought in the Bankruptcy Court the Parties consent to and agree to submit to the jurisdiction of the Bankruptcy Court.

14. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the respective Parties, and their legal representatives, successors, assigns and heirs.

15. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to constitute an original Agreement, and all of which shall constitute one Agreement. The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

16. **Release of Interest.** Timothy Eyman hereby releases any and all interest in the real or personal property that ends up being sold or abandoned pursuant to this Agreement. Timothy Eyman also agrees to tender the title of the vehicles listed in Exhibit A to Karen Eyman within 10 days of the Settlement Effective Date.

**The State of Washington:**

By: Susan Edison, Assistant Attorney General
  State of Washington

Dated: _____

**The Trustee for the Estate:**

By: Virginia Burdette, Chapter 7 Trustee

Dated: _____

no representations, inducements, promises or agreements, oral or otherwise, not embodied herein. Any and all prior discussions, negotiations, commitments and understandings relating thereto are merged herein. There are no conditions precedent to the effectiveness of this Agreement other than as stated herein, and there are no related collateral agreements existing between the Parties that are not referenced herein.

13. **Law.** This Agreement shall be governed by, construed and enforced in accordance with the United States Bankruptcy Code, Title 11 of the United States Code. To the extent state law applies, this Agreement shall be governed by, construed and enforced in accordance with the internal laws of the state of Washington, without giving effect to principles and provisions thereof relating to conflict or choice of laws irrespective of the fact that any one of the Parties is now or may become a resident of a different state. Any action to enforce this Agreement shall be brought in the Bankruptcy Court the Parties consent to and agree to submit to the jurisdiction of the Bankruptcy Court.

14. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the respective Parties, and their legal representatives, successors, assigns and heirs.

15. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to constitute an original Agreement, and all of which shall constitute one Agreement. The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

16. **Release of Interest.** Timothy Eyman hereby releases any and all interest in the real or personal property that ends up being sold or abandoned pursuant to this Agreement. Timothy Eyman also agrees to tender the title of the vehicles listed in Exhibit A to Karen Eyman within 10 days of the Settlement Effective Date.

**The State of Washington:**

By: Susan Edison, Assistant Attorney General
State of Washington

Dated: _____

**The Trustee for the Estate:**

By: Virginia Burdette, Chapter 7 Trustee

Dated: 6/20/22

The Debtor:

Timothy Donald Eyman, Debtor

Dated: 6/21/22

**Karen Williams fka Karen Eyman:**

_____

Karen Williams fka Karen Eyman

Dated: _____

**Goodstein Law Group PLLC**

_____

By: Carolyn A. Lake

Dated: _____

**The Debtor:**

_____

Timothy Donald Eyman, Debtor

Dated: _____

**Karen Williams fka Karen Eyman:**

_____

Karen Williams fka Karen Eyman

Dated: 6/21/2022

**Goodstein Law Group PLLC**

_____

By: Carolyn A. Lake

Dated: _____

**The Debtor:**

_____

Timothy Donald Eyman, Debtor

Dated: _____

**Karen Williams fka Karen Eyman:**

_____

Karen Williams fka Karen Eyman

Dated: _____

**Goodstein Law Group PLLC**

By: Carolyn A. Lake  Its Sole Managing Member

Dated:  21 July 2022

**EXHIBIT A**

Inventory of Property to be Abandoned.

- Cars
  - 2013 Mercedes C300
  - 2012 Chrysler Touring 200

- Downstairs
  - Formal Living Room
    - Couch, 2 chairs, shelves, coffee table, end table, keyboard piano, and decor art.
  - Formal dining room
    - Dining table with 8 chairs, side table, and decor art.
  - Kitchen
    - Dining table with 8 chairs, typical kitchenware and small appliances.
  - Family Room
    - Section couch, TV stand and TV.
    - Art by local artist John Ebner.
  - Office
    - Desk and shelves.

- Upstairs
  - Master bedroom plus 3 others
    - 4 bedroom "sets"
    - 4 TV's
    - Assortment decorative mirrors and canvas art.

- Jewelry
  - Wedding ring, sapphire birthstone ring and ¼ carat diamond stud earrings (total maximum value $1000).

- Outside
  - Table with 4 chairs and barbecue.

- Other misc. items including clothing and general normal personal possessions located in the home; general normal bathroom personal possessions; musical instruments; knick-knacks and keepsakes; books; home computer and cell phones; and garden items.

**EXHIBIT B**

## RESIDENTIAL PURCHASE AND SALE AGREEMENT

This Residential Purchase and Sale Agreement ("RPSA Agreement" or "Agreement") is made as of June __, 2022, by and between Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB ("Seller"), and Karen Williams, fka Karen Eyman, as her separate estate ("Purchaser").

## RECITALS

A.    Seller has an interest in that certain real property and the improvements located in Snohomish County, Washington, commonly known as 11913 59th Avenue West, Mukilteo, Washington, and legally described on **Exhibit 1**, attached hereto and incorporated herein by this reference (the "Property").

B.    Seller desires to transfer, and Purchaser desires to obtain, all of Seller's interest in and to the Property, in accordance with the terms and conditions set forth herein.

C.    A settlement agreement to resolve some issues related to the bankruptcy proceeding referenced above was entered into by and between Seller, Purchaser, Timothy Donald Eyman, the State of Washington, and Goodstein Law Group in June 2022. ("Settlement Agreement"). The Settlement Agreement, which is subject to approval by the Bankruptcy Court in the above-referenced case, contains provisions regarding the sale and purchase addressed in this RPSA Agreement.

## AGREEMENT

**NOW, THEREFORE,** the Parties agree as follows:

1.    **Purchase and Sale.** Seller shall sell the Property to Purchaser, and Purchaser shall buy the Property from Seller, upon the terms set forth herein.

2.    **Purchase Price/Payment.** The total purchase price ("Purchase Price") shall be in the sum of Nine Hundred Six Thousand Four Hundred Eighty-Four and No/100 Dollars ($906,484.00). The Purchase Price shall be payable by Purchaser to Seller at Closing.

3.    **Title and Title Insurance**.

3.1    **Title**. At Closing, Seller shall convey the Property to Purchaser by Quit Claim Deed ("Deed"), a form of which is attached as **Exhibit 2**. The sale of the Property is "as is" without warranties or contingencies of any kind except for as provided herein.

3.2    **Closing Agent.** The closing agent for this transaction shall be Wanda Nuxoll of WREN Law and Escrow Services, or other agent agreed to by Seller and Purchaser (the "Closing Agent"). Purchaser may obtain, at her option and at her own cost, a standard form owner's policy of title insurance ("Owner's Policy"). In no event shall a delay in Purchaser obtaining the Owner's Policy, at her election, delay the timeline for this transaction to close, as provided at ¶10.

-1-

4. **Disclosure.** Seller and Purchaser agree this transaction is exempt from disclosure ordinarily required by RCW 64.06.020 pursuant to RCW 64.06.010(6) because the sale is by a trustee in bankruptcy.

5. **Representations and Warranties of Seller.** Seller hereby makes the following representations and warranties to Purchaser which shall also be true as of Closing and which shall survive Closing:

    5.1    **Authority.** Seller has the power and authority to enter into this Agreement and to perform all of Seller's obligations hereunder; and

    **Seller makes no representations or warranties regarding the Property other than those specifically set forth herein, including, without limitation, no representations or warranties regarding the general condition of the Property (including the improvements located thereon), boundary lines, possible encroachments, or size of the Property, compliance with environmental laws, zoning or land-use matters or the existence of any wetlands, surface water or flooding on the Property. Except as specifically represented and warranted above, the Property is sold "As Is". Purchaser is relying upon her own pre-closing inspections and investigations of the Property.**

6. **Representations and Warranties of Purchaser.** Purchaser hereby makes the following representations and warranties to Seller which shall also be true as of Closing and which shall survive Closing:

    6.1    **Authority.** Purchaser has the power and authority to enter into this Agreement and to perform all of Purchaser's obligations hereunder;

    6.2    **Financial Status.** Purchaser warrants and represents that Purchaser is financially capable to faithfully perform the terms of this Agreement; and

    6.3    **No Broker.** Purchaser has not used any broker in connection with the purchase of this Property and no commission shall be due as a result of this transaction.

7. **Contingencies.** The Parties' obligation to close shall be conditioned upon the satisfaction of the following as well as any other requirements in the Settlement Agreement (e.g. source of purchase price):

    7.1    **Seller's Representations and Warranties.** Seller's representations and warranties contained herein shall be true and correct when made and as of Closing.

    7.2    **Purchaser's Representations and Warranties.** Purchaser's representations and warranties contained herein shall be true and correct when made and as of Closing.

    7.3    **Bankruptcy Court Approval.** This sale is subject to and contingent upon approval of the Settlement Agreement (as defined in Recitals and ¶10) by the Bankruptcy Court (as defined in ¶15).

-2-

8.     **Property Condition**. Seller and Purchaser acknowledge and agree that Seller is not, and has never been, in possession of the Property and has not had an adequate opportunity to perform any investigations and/or due diligence with respect to the condition of the Property. Purchaser, who has been in possession of and who has been living on the Property, has conducted her own investigation and due diligence and is satisfied with the condition of the Property. Thus, Purchaser expressly waives her right of the inspection of the Property, as well as any other disclosures required by any other statute, rule, regulation, or ordinance.

9.     **Included Items**. Linoleum, window screens, screen doors, plumbing and lighting fixtures (except floor, standing and swag lamps), appliances (including the washer, dryer, refrigerator and stove), shades, venetian blinds, curtain rods, drapes, all attached bathroom fixtures, attached television antennas, attached carpeting, trees, plants and shrubbery in the yard, water heating apparatus and fixtures, awnings, ventilating, cooling and heating systems, attached irrigation equipment that are now on the Property, and shares in the light and water companies and associations, if any, shall be included in the sale.

10.     **Closing**. The consummation of the transactions contemplated by this Agreement ("Closing") shall take place on or before July 29, 2022, or upon the Effective Date of the Settlement Agreement as defined at Paragraph 8 therein, whichever is later (the "Closing Date"). The deadline for Closing may also be extended in writing by mutual agreement between the Trustee and Karen Eyman, PROVIDED that the extension of the Closing is not more than thirty (30) days. Per the Settlement Agreement, any extension of the Closing for more than thirty (30) days shall only be by mutual agreement in writing between all of the parties to the Settlement Agreement.

10.1.     **Proration.** Taxes, utilities, and other similar charges for the then current year shall be solely the responsibility of the Purchaser.

10.2     **Closing Costs.** Purchaser and Seller shall each pay one half of the fees and costs of the Closing Agent. Purchaser agrees to pay the cost of the Owner's Policy of title insurance. Seller shall pay the Real Estate Excise Tax and all capital gains taxes and/or income taxes incurred as a result of the transfer. Seller's approved administrative claims shall be a deduction to the amount of any capital gains and income taxes owed as provided by applicable law. Purchaser and Seller will deposit timely in escrow with the Closing Agent all instruments and monies necessary to complete the purchase and sale.

10.3     **Possession.** Purchaser shall be entitled to possession of the Property at Closing.

10.4     **Deliveries by Seller.** At Closing, Seller shall deliver to Purchaser the Quit Claim Deed.

10.5     **Deliveries by Purchaser.** At or prior to Closing, Purchaser shall deliver the Purchase Price to Seller.

11.     **Default/Remedies.** In the event Purchaser or Seller fails to complete the purchase of the Property, then the provisions of the Settlement Agreement, including ¶ 9 regarding "Default" will apply.

12. **Binding Effect.** This Agreement shall be binding upon and shall inure to the benefit of the respective successors, heirs, and assigns of each of the Parties.

13. **Time of Essence.** Time is of the essence of this Agreement. Any party's failure to strictly perform as agreed will constitute a material breach under this Agreement, entitling the nonbreaching party, in its sole discretion, to seek their remedies afforded to them pursuant to terms and conditions of this Agreement and the Settlement Agreement.

14. **Attorney's Fees.** If any action or proceeding is commenced by either party to enforce their rights under this Agreement or to collect damages as a result of the breach of any of the provisions of this Agreement, the prevailing party in such action or proceeding, including any bankruptcy, insolvency or appellate proceedings, as determined by the Court will be entitled to recover all reasonable costs and expenses, including, without limitation, reasonable attorneys' fees and costs, in addition to any other relief awarded by the court, and attorneys' fees and costs in connection with any appeal or with regard to any bankruptcy action.

15. **Venue/Governing Law.** This Agreement shall be governed by, construed and enforced in accordance with the United States Bankruptcy Code, Title 11 of the United States Code. To the extent state law applies, this Agreement shall be governed by, construed and enforced in accordance with the internal laws of the State of Washington, without giving effect to principles and provisions thereof relating to conflict or choice of laws irrespective of the fact that any one of the parties is now or may become a resident of a different state. Any action to enforce this Agreement shall be brought in the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court") and the Parties consent to and agree to submit to the jurisdiction of the Bankruptcy Court. Both parties agree that the U.S. Bankruptcy Court for the Western District of Washington has both *in personam* and subject matter jurisdiction to enforce this Agreement.

16. **Counterparts and Facsimiles.** This Agreement may be executed in counterparts and shall become effective when identical counterparts have been signed by all parties. For purposes of this Agreement, scanned or facsimile signatures shall be deemed to be original signatures.

17. **Continuing Duty to Cooperate.** Each party agrees to perform any further acts and to execute and deliver such further documents which may be reasonably necessary to carry out the intent and terms of this Agreement.

18. **Severability.** If any provision of this Agreement or application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement (including the application of such provision to persons or circumstances other than those to which it is held invalid or unenforceable) shall not be affected thereby, and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

19. **Waiver.** No waiver by Purchaser or Seller of any of the terms or conditions of this Agreement or any of their respective rights under this Agreement shall be effective unless such waiver is in writing and signed by the party charged with the waiver.

-4-

20. **Entire Agreement.** This Agreement sets forth the entire agreement of the Parties regarding its subject matter. This Agreement supersedes all previous offers, counteroffers, oral agreements, and understandings all of which have been integrated into this Agreement. This Agreement may not be modified, amended, altered, or superseded except by an agreement in writing signed by the Parties.

21. **Expenses.** Each party shall pay all costs and expenses, including attorney's fees, incurred or to be incurred by it in negotiating, preparing and implementing this Agreement, except as expressly set forth otherwise in this Agreement or the Settlement Agreement.

22. **Acknowledgements.** The Parties hereby acknowledge that: (a) they are represented by legal counsel of their choice (or have knowingly and intelligently waived their right to have legal counsel of their choice review and represent them with respect to the negotiation and preparation of the Agreement); (b) they are fully aware of the terms contained in the Agreement; (c) they are entering into the Agreement (and any documents executed in connection with the Agreement) voluntarily and without coercion or duress of any kind; and (d) no partnership or joint venture is created hereby or otherwise exists by virtue of the transactions entered into by the Parties. The Parties have generated this Agreement through equal negotiations, and it should not be interpreted or construed more favorably or unfavorably as to any Party. Further, the Parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature.

24. **Incorporation of Recitals.** The Parties agree that the recitals contained herein are material to the terms of this Agreement and are hereby incorporated and made a part of this Agreement.

25. **No Third-Party Beneficiaries.** Nothing in the Agreement, express or implied, shall be construed to confer any right, remedy, claim, obligation, or liability upon any person other than the Parties.

26. **Tax Consequences.** The Parties acknowledge and agree that there may be tax consequences stemming from this Agreement. Each Party is solely responsible for any and all federal, state, city, or local taxes which might be due and owing as a result of any term contained in this Agreement. The Parties acknowledge that no tax advice has been offered or given by either party, their attorneys, agents, or any other representatives, in the course of these negotiations, and each party is relying upon the advice of his or her own tax consultant with regard to any tax consequences that may arise as a result of the execution of this Agreement.

[SIGNATURES ON FOLLOWING PAGES]

We hereby accept the terms and conditions of this Agreement:

**SELLER:**

VIRGINIA BURDETTE, SOLELY IN HER CAPACITY
AS THE DULY APPOINTED CHAPTER 7 TRUSTEE
OF *IN RE TIMOTHY DONALD EYMAN*,
CAUSE NO. 18-14536-MLB

_____          Date: _____
Virginia Burdette, Chapter 7 Trustee

**BUYER:**

KAREN WILLIAMS, FKA KAREN EYMAN

_____          Date: _____
Karen Williams, as her separate estate

-6-

**EXHIBIT 1**

**PROPERTY DESCRIPTION**

LOT 5, ONE CLUB HOUSE LANE, DIV. 6, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 57 OF PLATS, PAGES 258 THROUGH 270 INCLUSIVE, RECORDS OF SNOHOMISH COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF SNOHOMISH, STATE OF WASHINGTON.

Tax Parcel Number: 00834700000500

-7-

**EXHIBIT 2**

**Return Address:**
Karen Williams
11913 59th Avenue West
Mukilteo Washington 98275

---

## QUIT CLAIM DEED

| | |
|---|---|
| **Grantor:** | Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB |
| **Grantee:** | Karen Williams, as her separate estate |
| **Abbreviated Legal:** | ONE CLUB HOUSE LANE DIV 6 BLK 000 D-00 LOT 5 |
| **Tax Parcel No.:** | 00834700000500 |

## QUIT CLAIM DEED

The Grantor, Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB, and pursuant to the Settlement Agreement executed in connection with that certain bankruptcy proceeding in the United States Bankruptcy Court in the Western District of Washington, *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB, conveys and quit claims unto Karen Williams, as her separate estate, as Grantee, all of the Grantor's right, title, and interest in that certain real property situated in the County of Snohomish, State of Washington (the "Real Property"), and all after acquired title of the Grantor therein, which Real Property is legally described on **Exhibit to Quit Claim Deed**, attached hereto and incorporated herein by this reference.

DATED June ___, 2022.

GRANTOR:

_____

Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB

-8-

STATE OF WASHINGTON )
                             ) ss.
COUNTY OF _____ )

      I certify that I know or have satisfactory evidence that _____, appeared before me on behalf of Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB, and said person acknowledged that he/she signed this instrument and acknowledged it to be his/her free and voluntary act for the uses and purposes mentioned in the instrument.

      DATED this ___ day of June 2022.

                                  _____

                                  Name: _____
                                  Notary Public in and for the State of Washington
                                  residing at: _____
                                  My Appointment Expires: _____

**EXHIBIT to Quit Claim Deed**

LOT 5, ONE CLUB HOUSE LANE, DIV. 6, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 57 OF PLATS, PAGES 258 THROUGH 270 INCLUSIVE, RECORDS OF SNOHOMISH COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF SNOHOMISH, STATE OF WASHINGTON.

Tax Parcel Number: 00834700000500

# RESIDENTIAL PURCHASE AND SALE AGREEMENT

This Residential Purchase and Sale Agreement ("RPSA Agreement" or "Agreement") is made as of June 20 2022, by and between Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB ("Seller"), and Karen Williams, fka Karen Eyman, as her separate estate ("Purchaser").

## RECITALS

A.     Seller has an interest in that certain real property and the improvements located in Snohomish County, Washington, commonly known as 11913 59th Avenue West, Mukilteo, Washington, and legally described on **Exhibit 1**, attached hereto and incorporated herein by this reference (the "Property").

B.     Seller desires to transfer, and Purchaser desires to obtain, all of Seller's interest in and to the Property, in accordance with the terms and conditions set forth herein.

C.     A settlement agreement to resolve some issues related to the bankruptcy proceeding referenced above was entered into by and between Seller, Purchaser, Timothy Donald Eyman, the State of Washington, and Goodstein Law Group in June 2022. ("Settlement Agreement"). The Settlement Agreement, which is subject to approval by the Bankruptcy Court in the above-referenced case, contains provisions regarding the sale and purchase addressed in this RPSA Agreement.

## AGREEMENT

**NOW, THEREFORE,** the Parties agree as follows:

1.     **Purchase and Sale.** Seller shall sell the Property to Purchaser, and Purchaser shall buy the Property from Seller, upon the terms set forth herein.

2.     **Purchase Price/Payment.** The total purchase price ("Purchase Price") shall be in the sum of Nine Hundred Six Thousand Four Hundred Eighty-Four and No/100 Dollars ($906,484.00). The Purchase Price shall be payable by Purchaser to Seller at Closing.

3.     **Title and Title Insurance.**

3.1     **Title.** At Closing, Seller shall convey the Property to Purchaser by Quit Claim Deed ("Deed"), a form of which is attached as **Exhibit 2**. The sale of the Property is "as is" without warranties or contingencies of any kind except for as provided herein.

3.2     **Closing Agent.** The closing agent for this transaction shall be Wanda Nuxoll of WREN Law and Escrow Services, or other agent agreed to by Seller and Purchaser (the "Closing Agent"). Purchaser may obtain, at her option and at her own cost, a standard form owner's policy of title insurance ("Owner's Policy"). In no event shall a delay in Purchaser obtaining the Owner's Policy, at her election, delay the timeline for this transaction to close, as provided at ¶10.

-1-

4.    **Disclosure.** Seller and Purchaser agree this transaction is exempt from disclosure ordinarily required by RCW 64.06.020 pursuant to RCW 64.06.010(6) because the sale is by a trustee in bankruptcy.

5.    **Representations and Warranties of Seller.** Seller hereby makes the following representations and warranties to Purchaser which shall also be true as of Closing and which shall survive Closing:

5.1    **Authority.** Seller has the power and authority to enter into this Agreement and to perform all of Seller's obligations hereunder; and

**Seller makes no representations or warranties regarding the Property other than those specifically set forth herein, including, without limitation, no representations or warranties regarding the general condition of the Property (including the improvements located thereon), boundary lines, possible encroachments, or size of the Property, compliance with environmental laws, zoning or land-use matters or the existence of any wetlands, surface water or flooding on the Property. Except as specifically represented and warranted above, the Property is sold "As Is". Purchaser is relying upon her own pre-closing inspections and investigations of the Property.**

6.    **Representations and Warranties of Purchaser.** Purchaser hereby makes the following representations and warranties to Seller which shall also be true as of Closing and which shall survive Closing:

6.1    **Authority.** Purchaser has the power and authority to enter into this Agreement and to perform all of Purchaser's obligations hereunder;

6.2    **Financial Status.** Purchaser warrants and represents that Purchaser is financially capable to faithfully perform the terms of this Agreement; and

6.3    **No Broker.** Purchaser has not used any broker in connection with the purchase of this Property and no commission shall be due as a result of this transaction.

7.    **Contingencies.** The Parties' obligation to close shall be conditioned upon the satisfaction of the following as well as any other requirements in the Settlement Agreement (e.g. source of purchase price):

7.1    **Seller's Representations and Warranties.** Seller's representations and warranties contained herein shall be true and correct when made and as of Closing.

7.2    **Purchaser's Representations and Warranties.** Purchaser's representations and warranties contained herein shall be true and correct when made and as of Closing.

7.3    **Bankruptcy Court Approval.** This sale is subject to and contingent upon approval of the Settlement Agreement (as defined in Recitals and ¶10) by the Bankruptcy Court (as defined in ¶15).

-2-

8. **Property Condition.** Seller and Purchaser acknowledge and agree that Seller is not, and has never been, in possession of the Property and has not had an adequate opportunity to perform any investigations and/or due diligence with respect to the condition of the Property. Purchaser, who has been in possession of and who has been living on the Property, has conducted her own investigation and due diligence and is satisfied with the condition of the Property. Thus, Purchaser expressly waives her right of the inspection of the Property, as well as any other disclosures required by any other statute, rule, regulation, or ordinance.

9. **Included Items.** Linoleum, window screens, screen doors, plumbing and lighting fixtures (except floor, standing and swag lamps), appliances (including the washer, dryer, refrigerator and stove), shades, venetian blinds, curtain rods, drapes, all attached bathroom fixtures, attached television antennas, attached carpeting, trees, plants and shrubbery in the yard, water heating apparatus and fixtures, awnings, ventilating, cooling and heating systems, attached irrigation equipment that are now on the Property, and shares in the light and water companies and associations, if any, shall be included in the sale.

10. **Closing.** The consummation of the transactions contemplated by this Agreement ("Closing") shall take place on or before July 29, 2022, or upon the Effective Date of the Settlement Agreement as defined at Paragraph 8 therein, whichever is later (the "Closing Date"). The deadline for Closing may also be extended in writing by mutual agreement between the Trustee and Karen Eyman, PROVIDED that the extension of the Closing is not more than thirty (30) days. Per the Settlement Agreement, any extension of the Closing for more than thirty (30) days shall only be by mutual agreement in writing between all of the parties to the Settlement Agreement.

10.1. **Proration.** Taxes, utilities, and other similar charges for the then current year shall be solely the responsibility of the Purchaser.

10.2 **Closing Costs.** Purchaser and Seller shall each pay one half of the fees and costs of the Closing Agent. Purchaser agrees to pay the cost of the Owner's Policy of title insurance. Seller shall pay the Real Estate Excise Tax and all capital gains taxes and/or income taxes incurred as a result of the transfer. Seller's approved administrative claims shall be a deduction to the amount of any capital gains and income taxes owed as provided by applicable law. Purchaser and Seller will deposit timely in escrow with the Closing Agent all instruments and monies necessary to complete the purchase and sale.

10.3 **Possession.** Purchaser shall be entitled to possession of the Property at Closing.

10.4 **Deliveries by Seller.** At Closing, Seller shall deliver to Purchaser the Quit Claim Deed.

10.5 **Deliveries by Purchaser.** At or prior to Closing, Purchaser shall deliver the Purchase Price to Seller.

11. **Default/Remedies.** In the event Purchaser or Seller fails to complete the purchase of the Property, then the provisions of the Settlement Agreement, including ¶ 9 regarding "Default" will apply.

-3-

12. **Binding Effect.** This Agreement shall be binding upon and shall inure to the benefit of the respective successors, heirs, and assigns of each of the Parties.

13. **Time of Essence.** Time is of the essence of this Agreement. Any party's failure to strictly perform as agreed will constitute a material breach under this Agreement, entitling the nonbreaching party, in its sole discretion, to seek their remedies afforded to them pursuant to terms and conditions of this Agreement and the Settlement Agreement.

14. **Attorney's Fees.** If any action or proceeding is commenced by either party to enforce their rights under this Agreement or to collect damages as a result of the breach of any of the provisions of this Agreement, the prevailing party in such action or proceeding, including any bankruptcy, insolvency or appellate proceedings, as determined by the Court will be entitled to recover all reasonable costs and expenses, including, without limitation, reasonable attorneys' fees and costs, in addition to any other relief awarded by the court, and attorneys' fees and costs in connection with any appeal or with regard to any bankruptcy action.

15. **Venue/Governing Law.** This Agreement shall be governed by, construed and enforced in accordance with the United States Bankruptcy Code, Title 11 of the United States Code. To the extent state law applies, this Agreement shall be governed by, construed and enforced in accordance with the internal laws of the State of Washington, without giving effect to principles and provisions thereof relating to conflict or choice of laws irrespective of the fact that any one of the parties is now or may become a resident of a different state. Any action to enforce this Agreement shall be brought in the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court") and the Parties consent to and agree to submit to the jurisdiction of the Bankruptcy Court. Both parties agree that the U.S. Bankruptcy Court for the Western District of Washington has both *in personam* and subject matter jurisdiction to enforce this Agreement.

16. **Counterparts and Facsimiles.** This Agreement may be executed in counterparts and shall become effective when identical counterparts have been signed by all parties. For purposes of this Agreement, scanned or facsimile signatures shall be deemed to be original signatures.

17. **Continuing Duty to Cooperate.** Each party agrees to perform any further acts and to execute and deliver such further documents which may be reasonably necessary to carry out the intent and terms of this Agreement.

18. **Severability.** If any provision of this Agreement or application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement (including the application of such provision to persons or circumstances other than those to which it is held invalid or unenforceable) shall not be affected thereby, and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

19. **Waiver.** No waiver by Purchaser or Seller of any of the terms or conditions of this Agreement or any of their respective rights under this Agreement shall be effective unless such waiver is in writing and signed by the party charged with the waiver.

-4-

20. **Entire Agreement.** This Agreement sets forth the entire agreement of the Parties regarding its subject matter. This Agreement supersedes all previous offers, counteroffers, oral agreements, and understandings all of which have been integrated into this Agreement. This Agreement may not be modified, amended, altered, or superseded except by an agreement in writing signed by the Parties.

21. **Expenses.** Each party shall pay all costs and expenses, including attorney's fees, incurred or to be incurred by it in negotiating, preparing and implementing this Agreement, except as expressly set forth otherwise in this Agreement or the Settlement Agreement.

22. **Acknowledgements.** The Parties hereby acknowledge that: (a) they are represented by legal counsel of their choice (or have knowingly and intelligently waived their right to have legal counsel of their choice review and represent them with respect to the negotiation and preparation of the Agreement); (b) they are fully aware of the terms contained in the Agreement; (c) they are entering into the Agreement (and any documents executed in connection with the Agreement) voluntarily and without coercion or duress of any kind; and (d) no partnership or joint venture is created hereby or otherwise exists by virtue of the transactions entered into by the Parties. The Parties have generated this Agreement through equal negotiations, and it should not be interpreted or construed more favorably or unfavorably as to any Party. Further, the Parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature.

24. **Incorporation of Recitals.** The Parties agree that the recitals contained herein are material to the terms of this Agreement and are hereby incorporated and made a part of this Agreement.

25. **No Third-Party Beneficiaries.** Nothing in the Agreement, express or implied, shall be construed to confer any right, remedy, claim, obligation, or liability upon any person other than the Parties.

26. **Tax Consequences.** The Parties acknowledge and agree that there may be tax consequences stemming from this Agreement. Each Party is solely responsible for any and all federal, state, city, or local taxes which might be due and owing as a result of any term contained in this Agreement. The Parties acknowledge that no tax advice has been offered or given by either party, their attorneys, agents, or any other representatives, in the course of these negotiations, and each party is relying upon the advice of his or her own tax consultant with regard to any tax consequences that may arise as a result of the execution of this Agreement.

[SIGNATURES ON FOLLOWING PAGES]



-5-

We hereby accept the terms and conditions of this Agreement:

SELLER:

VIRGINIA BURDETTE, SOLELY IN HER CAPACITY
AS THE DULY APPOINTED CHAPTER 7 TRUSTEE
OF *IN RE TIMOTHY DONALD EYMAN*,
CAUSE NO. 18-14536-MLB

Date: 6/20/22

_____
Virginia Burdette, Chapter 7 Trustee

BUYER:

KAREN WILLIAMS, FKA KAREN EYMAN

Date: _____

_____
Karen Williams, as her separate estate

-6-

We hereby accept the terms and conditions of this Agreement:

**SELLER:**

VIRGINIA BURDETTE, SOLELY IN HER CAPACITY
AS THE DULY APPOINTED CHAPTER 7 TRUSTEE
OF *IN RE TIMOTHY DONALD EYMAN*,
CAUSE NO. 18-14536-MLB

_____          Date: _____
Virginia Burdette, Chapter 7 Trustee

**BUYER:**

KAREN WILLIAMS, FKA KAREN EYMAN

_____          Date: 6/21/2022
Karen Williams, as her separate estate

-6-

**EXHIBIT 1**

**PROPERTY DESCRIPTION**

LOT 5, ONE CLUB HOUSE LANE, DIV. 6, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 57 OF PLATS, PAGES 258 THROUGH 270 INCLUSIVE, RECORDS OF SNOHOMISH COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF SNOHOMISH, STATE OF WASHINGTON.

Tax Parcel Number: 00834700000500

EXHIBIT 2

Return Address:
Karen Williams
11913 59th Avenue West
Mukilteo Washington 98275

---

## QUIT CLAIM DEED

| | |
|---|---|
| **Grantor:** | Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB |
| **Grantee:** | Karen Williams, as her separate estate |
| **Abbreviated Legal:** | ONE CLUB HOUSE LANE DIV 6 BLK 000 D-00 LOT 5 |
| **Tax Parcel No.:** | 00834700000500 |

### QUIT CLAIM DEED

The Grantor, Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB, and pursuant to the Settlement Agreement executed in connection with that certain bankruptcy proceeding in the United States Bankruptcy Court in the Western District of Washington, *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB, conveys and quit claims unto Karen Williams, as her separate estate, as Grantee, all of the Grantor's right, title, and interest in that certain real property situated in the County of Snohomish, State of Washington (the "Real Property"), and all after acquired title of the Grantor therein, which Real Property is legally described on **Exhibit to Quit Claim Deed**, attached hereto and incorporated herein by this reference.

DATED June ___, 2022.

GRANTOR:

_____
Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB

-8-

STATE OF WASHINGTON )
                               ) ss.
COUNTY OF _____ )

      I certify that I know or have satisfactory evidence that _____, appeared before me on behalf of Virginia Burdette, solely in her capacity as the duly appointed Chapter 7 Trustee of *In re Timothy Donald Eyman*, Cause No. 18-14536-MLB, and said person acknowledged that he/she signed this instrument and acknowledged it to be his/her free and voluntary act for the uses and purposes mentioned in the instrument.

      DATED this ___ day of June 2022.

                                          Name: _____
                                          Notary Public in and for the State of Washington
                                          residing at: _____
                                          My Appointment Expires: _____

**EXHIBIT to Quit Claim Deed**

LOT 5, ONE CLUB HOUSE LANE, DIV. 6, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 57 OF PLATS, PAGES 258 THROUGH 270 INCLUSIVE, RECORDS OF SNOHOMISH COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF SNOHOMISH, STATE OF WASHINGTON.

Tax Parcel Number: 00834700000500